UNITED STATES of America,
Plaintiff-Appellee,

v.

Marvin M. HOLTZMAN, Defendant-
Appellant.

No. 18252.

United States Court of Appeals,
Seventh Circuit.

April 9, 1971.

Donna & Gilman, Howard Gilman, Chicago, Ill., for defendant-appellant.

William J. Bauer, U. S. Atty., Thomas G. Dent, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel.

Before KNOCH, Senior Circuit Judge, and CUMMINGS and KERNER, Circuit Judges.

KNOCH, Senior Circuit Judge.

Plaintiff-Appellant, Marvin M. Holtzman, has taken this appeal from judgments of conviction in a jury trial on six counts of a 12-count information charging defendant and one John Bell with six violations of Title 21, U.S.C. § 331(q) (2), 79 Stat. 232 by unlawful sale, delivery or other disposition of a depressant or stimulant drug and six violations of § 331(q) (3) unlawful possession of a depressant or stimulant drug for sale, delivery or other disposi-

tion. Six different transactions were involved over a period of 10 months.

The jury found defendant guilty on six counts involving transactions on March 28, April 30 and May 21, 1968. He was sentenced to one year's imprisonment on counts seven and nine, the sentence on count nine to run consecutively with that on count seven, and three years' probation on counts eight, ten, eleven and twelve to run concurrently with each other, to begin on completion of the sentence on count nine.

The co-defendant, John Bell, pleaded guilty. He was a witness at the trial.

Briefly, the evidence showed that on or about July 15, 1967, believing Bobby Hogancamp, an agent for the Federal Bureau of Drug Abuse Control, and Kenneth Knorr, also an agency employee, to be truck drivers, the co-defendant. Bell, agreed to sell them some "pills", kept them waiting near 42nd and Halsted Streets in Chicago, Illinois, while he asked defendant who was a bartender in the Horn Palace Bar on Halsted Street for pills. Defendant agreed to sell some if Bell would come back later. The two agents went to Stanley's Bar where Bell promised to call them. Bell testified that he returned to the Horn Palace and bought about 2000 "pills", which defendant took from beneath the bar. Agent Hogancamp testified that Bell on that same night sold him and Knorr 1000 amphetamine capsules and 1000 amphetamine tablets. Bell said that defendant cautioned him to be careful to whom he sold, and Bell had replied he would sell them to truck driver friends.

Again, on March 20, 1968, Bell, after calling defendant, agreed to sell Agent Hogancamp more pills. They met at Bell's place of employment and drove in separate cars to the Horn Palace. Bell, entering alone, bought 2000 pills, again being cautioned about customers and again stating these were for truck driver friends to which defendant said "all right". While Bell was inside Agent Hogancamp saw defendant come out, look up and down the street, then direct-

ly at Agent Hogancamp, before going back in. Agent Romaine Thornton also observed that. Bell returned. He and Agent Hogancamp went to Bell's place of employment where 2000 amphetamine tablets were sold to the agent.

Another sale occurred on March 21, 1968. Again Bell said he checked with defendant before agreeing to the sale, again defendant urged Bell to be careful to whom he sold and said "all right" when told these were for truck driver friends. Agent Hogancamp identified the approximately 3000 amphetamine tablets which Bell delivered to him on March 21, 1968. Agent Thornton, on surveillance, corroborated various details of the testimony as to the meetings, travel, entry and departure of Bell from the Horn Palace carrying a bag and entering Agent Hogancamp's car.

On March 28, 1968, similar arrangements were made except that after Bell paid defendant, defendant asked him to wait at the back door, which defendant did after explaining the delay to Agent Hogancamp. Bell and defendant went to an automobile which bore a license registered in defendant's name, which Agent Hogancamp said defendant appeared to unlock and from which Bell said defendant took a bag. He gave this to Bell who returned to the Agent to whom he sold the bag which Agent Hogancamp described as containing about 3000 amphetamine tablets and 2000 amphetamine capsules.

Another sale occurred on April 30, 1968. Bell agreed to meet the Agent in an alley on West 48th Place. Bell testified that in response to his call, defendant delivered 2000 pills to Bell at the alley. After defendant had left, the agent arrived and the sale was completed there. Other agents testified to seeing defendant leave the bar, drive to this vicinity and meet with Bell.

On May 21, 1968, the agent called Bell and asked for 1000 pills in a hurry. Bell called defendant who agreed to deliver them at the home of Betty Poland on West 48th Place. Defendant was seen leaving the bar and driving off.

His automobile was seen parked next to Mrs. Poland's address. He was seen getting out of the car walking toward the house and in a few minutes back to his car and then to the Horn Palace. Agent Hogancamp called Mrs. Poland, went to her home, received a bag of 2000 tablets in exchange for $140 of official government funds. Later Bell picked up the $140 at Mrs. Poland's and then paid defendant at the Horn Palace.

June 14, 1968, Agent Hogancamp arrested defendant at the Horn Palace. At that time the defendant had on his person a $50 bill whose serial number identified it as one of those given Mrs. Poland for the pills on May 21, 1968.

In addition to Agents Hogancamp and Thornton, Special Agents John William Chmelik and Phillip Vernon Fisher, who had observed various aspects of the above described incidents were all witnesses at the trial.

Defendant testified that he had never sold amphetamines to anybody.

He also testified that he was in the habit of holding packages for Bell and cashing larger bills for him, that he never knew what was in the packages, sometimes keeping them in the bar and sometimes in his automobile. He testified further that Bell at one time said he was staying with the Polands, who were also friends of the defendant's, whom defendant visited. Defendant identified the $50 bill found on him as part of his pay as a bartender. He said on cross examination, he had held packages for others too, but not to his knowledge for Chubb Williams.

Over objection the government introduced rebuttal evidence of defendant's past dealings. A Lawrence Williams, whose nickname was "Chubb", testified that in August 1966 he purchased 12,000 amphetamine tablets from defendant. His evidence was corroborated in part by Agent Robert LaBree and former agency employee Kenneth Knorr.

Arthur Palermo, owner of the Horn Palace and Otha Lee, porter and bartender there, also testified that John Bell was a customer who left packages to be picked up later by himself or others.

It was stipulated that Theodore Piwowar, analytical chemist for the Food and Drug Administration, would testify that the contents of the bottles taken from Williams in August 1966 were amphetamine tablets, and that Technician Joseph Mortimer of the Chicago Police Department Fingerprint Laboratory would testify that two of the bottles taken from Williams in August 1966 bore fingerprints which in his opinion were those of defendant.

In surrebuttal, defendant testified that he knew Williams only as a customer of the bar but had sold him no pills. He remembered Williams having come to the bar three years ago asking for Bell. He said Williams opened a duffel bag. Defendant had taken out two bottles and asked what they were. When Williams said they contained pills, defendant had put the bottles back into the bag and told Williams to get them out of the bar, which Williams had done.

Defendant contends that there was a fatal variance between the evidence and the offense charged in the information, that he was unduly prejudiced by admission of hearsay testimony and evidence of an unrelated crime, and that the court imposed double punishment.

Defendant's view is that he was never shown to have made any direct sales to Agent Hogancamp, and as he was not shown to have been aware of any intended resales in connection with the sales of March 28, April 30 and May 21, 1968 of which the jury found him guilty, he cannot be guilty as principal or aider and abettor. Similarly, he argues he was not a party to Bell's possession of the drugs as his connection ended when Bell acquired possession, leaving no joint possession at any time.

The government invites our attention to United States v. Bruno, 2 Cir., 1939, 105 F.2d 921, 922 (reversed on other grounds 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257) where the Court held that

the original suppliers knew that middlemen must sell to retailers and retailers knew middlemen must buy of importers of one sort or another, that the defendants at one end of the chain who did not know each other nevertheless knew that the unlawful business would not and could not stop with their buyers. Thus, the Court reasoned, the jury might have found each accused was embarked on a venture in all parts of which he was a participant and an abettor in that the success of that part with which he was immediately concerned was dependent on the success of the whole.

Similarly, in Direct Sales Co. v. United States, 1943, 319 U.S. 703, 705, 63 S. Ct. 1265, 87 L.Ed. 1674, the Court held that Direct Sales sold morphine to one Dr. Tate in such quantities that it must have known he could not dispense it all lawfully and was therefore distributing it illegally, and concluded (p. 713, 63 S. Ct. 1265) that there was no legal obstacle to finding knowledge and acquiescence.

In a 3-month period, there were sales of about 9000 tablets. Not only the quantity but the nature of the product was such as to give the seller notice that the buyer would use it unlawfully. United States v. Campisi, 2 Cir., 1962, 306 F.2d 308, 310, cert. den. sub. nom. Coppolla v. United States, 271 U.S. 920, 83 S.Ct. 287, 9 L.Ed.2d 229.

Defendant's understanding of the nature of the venture is underlined by his delivery to the Poland home and his extension of credit. Defendant maintained a supply on which Bell was able to draw on short notice. In two of the three sales for which he was convicted, he left his place of business to make delivery of the pills.

■ There was no fatal variance. Defendant is in no danger of double jeopardy. Sirico v. United States, 2 Cir., 1965, 350 F.2d 310, United States v. Spada, 2 Cir., 1964, 331 F.2d 995, cert. den. 379 U.S. 865, 85 S.Ct. 130, 13 L.Ed. 2d 67.

In the course of his testimony Bell quoted some of his conversations outside the presence of defendant. In one case he said he would check his "source" linking it to the Horn Palace, thus, defendant complains, creating the impression of a conspiracy which the evidence did not otherwise prove. Defendant characterizes these reported conversations as inadmissible hearsay.

Bell was not quoting third persons for the truth of their statements. He was testifying to what he himself said and did, and he was allowed to report his own statements only to the extent necessary to explain his actions. The Trial Judge at the time instructed the jury that the evidence was received solely for this limited purpose and not to establish the truth of the matter asserted, explaining this point in detail, with illustrative examples. The jury could not have been misled. See United States v. Manfredonia, 2 Cir., 1969, 414 F.2d 760, 765.

In any event both parties to the quoted conversations were witnesses at the trial, subject to cross examination. United States v. Peterson, 7 Cir., 1970, 435 F.2d 192, 195; Trigg v. United States, 7 Cir., 1970, 430 F.2d 372, 374.

As the government notes, no such prejudice as defendant fears can have resulted, as the jury found defendant not guilty on the first six counts despite testimony as to conversations between Bell and the agent.

■ Defendant argues that it was seriously prejudicial and improper to allow evidence of the unrelated crime of sales to Williams in 1966, admitted solely to impeach defendant's statement that he had never sold amphetamines, a point which defendant sees now as having no bearing on his built or innocence of the charges on which he was tried and which was collateral to the issues on trial.

Defendant cites a number of cases to support the proposition that evidence of a prior crime is prejudicial in diverting

the jury's attention from his responsibility for the crime charged to the improper issue of his bad character, and that a trial court should balance the prejudicial effect of such testimony against its tendency to prove a material fact. Defendant contends an abuse of discretion was committed because the relevance of the evidence did not outweigh its potentially prejudicial effect.

In response to this argument, the government quotes Justice Frankfurter in Walder v. United States, 1954, 347 U.S. 62, 65, 74 S.Ct. 354, 356, 98 L.Ed. 503 where a defendant similarly denied having ever sold narcotics to anyone in his life. Government agents were then permitted to testify to a prior case in which the defendant had been indicted for purchase and possession of a grain of heroin. The defendant's motion to suppress the evidence in that case on the ground of unlawful search and seizure had been granted and the case dismissed. Justice Frankfurter, noting that the defendant had gone beyond mere denial of the charge to make a sweeping claim, said:

> "He must be free to deny all the elements of the case against him without thereby giving leave to the Government to introduce by way of rebuttal evidence illegally secured by it, and therefore not available for its case in chief. Beyond that, however, there is hardly justification for letting the defendant affirmatively resort to perjurious testimony in reliance on the Government's disability to challenge his credibility."

Here, of course, there was no taint of unconstitutional acquisition of the testimony presented in rebuttal.

The Trial Judge carefully and fully instructed the jury on the limited purpose of the evidence. See also United States v. Smith, 7 Cir., 1970, 432 F.2d 1109, 1111.

Defendant sees §§ 331(q) (2) and (3) as obviously intended to apply to one overall activity: sale, delivery or other disposition to another person and possession for sale, delivery or other disposition to another. Defendant argues that the same evidence proved both sets of counts, and that the Trial Judge should not have imposed sentence on all counts.

■ In this case, the two consecutive one-year prison sentences were imposed on two of the sale counts and three-year probation periods run concurrently with the three-year probation period imposed on another sale count, so that the "double punishment" to which defendant refers does not arise. Where the verdict is justified on one count and sentences on others are concurrent, the reviewing court will not consider the other counts. Lawn v. United States, 1958, 355 U.S. 339, 359, 78 S.Ct. 311, 2 L.Ed.2d 321; United States v. Doran, 7 Cir., 1962, 299 F.2d 511, 514; cert. den. 370 U.S. 925, 82 S.Ct. 1563, 8 L.Ed.2d 504.

■ Nevertheless, we have given consideration to defendant's point. Courts may impose separate and consecutive sentences for violation of several statutory provisions in a single transaction. The test is whether each offense requires proof of a fact which the other does not. United States v. Johnson, 7 Cir., 1956, 235 F.2d 159, 161–162, cert. den. 352 U.S. 1006, 77 S.Ct. 567, 1 L.Ed.2d 551; United States v. Pearce, 7 Cir., 1960, 275 F.2d 318, 325; United States v. Jones, 7 Cir., 1957, 248 F.2d 772, 773, cert. den. 356 U.S. 923, 78 S.Ct. 707, 2 L.Ed.2d 718.

■ Title 21 U.S.C. § 331(q) (2) [unlike § 331(q) (3)] requires proof of a sale, delivery or other disposition to another. Title 21 U.S.C. § 331(q) (3) [unlike § 331(q) (2)] requires proof that possession is other than lawful. One may have lawful possession but sell unlawfully. One may have unlawful possession without actually making a sale. See also United States v. Fusco, 7 Cir., 1968, 398 F.2d 32, 36.

Careful study of all the points argued and authorities cited leaves us convinced that the judgment of the District Court must be affirmed.

Affirmed.