**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John H. JANSEN, Defendant-Appellant.**

**No. 72-1246.**

United States Court of Appeals, Seventh Circuit.

Argued Oct. 30, 1972.

Decided March 15, 1973.

Rehearing Denied April 23, 1973.

Carl M. Walsh, Maurice J. Walsh, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., William T. Huyck, Dan K. Webb, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before KNOCH, Senior Circuit Judge, and CUMMINGS and PELL, Circuit Judges.

PELL, Circuit Judge.

Defendant John Jansen appeals from his conviction by a jury of violating 18 U.S.C. § 111.[1] The two-count indictment against him had charged that he "did forcibly assault, resist, oppose, impede, intimidate and interfere with" two named officers of the Internal Revenue Service while they were engaged in the performance of their official duties.

At 2 p. m. on July 8, 1971, officers Edward Grant and Larry Morris, accom-

1. 18 U.S.C. § 111 provides in part:
    "Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both."
Section 1114 includes "any officer, employee or agent  .   .   .  of the internal revenue  .   .   .   ."

panied by several other IRS employees, went to The Orange Tree Tavern in Chicago to collect $4784 in federal taxes allegedly past due or, in the alternative, to "seize" the tavern. On meeting the defendant, who managed the tavern which was owned by his father, the officers identified themselves and explained the purpose of their visit. Jansen responded that he did not have enough money on hand to satisfy the debt. Grant thereupon read him the levy and declared the business seized for nonpayment of taxes. When Jansen stated he could raise the money that day and requested additional time to accomplish this, the agents agreed to wait until 4 p. m. In the interim period, the agents proceeded with the seizure, e. g., had a locksmith change the locks and ordered the bartender to count and turn over to them the contents of the cash register.

Shortly before 4 p. m., the tax still unsatisfied, officer Grant suggested to Jansen that he begin to gather his possessions in readiness to leave the tavern, which would be closed. Jansen's reaction to this announcement led to his indictment: (1) with arms upraised, he blocked the doorway and told the IRS officers he would not allow them to leave; (2) twice, by striking at officer Morris and holding down the telephone hook, he prevented Morris from calling the police; (3) he ignored Grant's warning to stand clear; (4) he knocked Grant's credentials from the agent's hand and ran to the back of the cocktail lounge, where Grant pursued him and retrieved the credentials; and (5) he grabbed the moneybag holding the contents of the seized cash register from Morris's hands and, when Morris started to give chase, raised his hands toward Morris. Later, after Jansen was arrested, officer Grant recovered the mon-

eybag at which time he discovered $234 was missing.

Jansen urges reversal on the basis of certain alleged procedural errors, the most significant of which arises from testimony of his having had a prior conviction for a misdemeanor. The attention given to the earlier conviction supposedly distracted the jury from the real issues at stake and created ineradicable prejudice against the defendant.

Apparently in an effort to show Jansen's good character, his counsel asked on direct examination: "Have you ever been convicted of a *crime?*" Jansen replied in the negative. At a subsequent conference between counsel and the court called at the Government's request and held outside the presence of the jury, Jansen's lawyer explained that he had made an unfortunate slip of the tongue; he and Jansen had practiced and he had intended to ask the question "Have you ever been convicted of a *felony?*" The defendant had been convicted of criminal damage to property, a misdemeanor under Illinois law. The Government attorney later elicited testimony from the defendant on cross-examination concerning the prior conviction.[2] The trial court overruled defense counsel's objection to the impeaching questions.

We find no abuse of discretion in the court's determination not to strike the exchange between Jansen and his attorney, the course of action suggested by the attorney at the conference. Counsel had posed the question at the beginning of the direct examination. The prosecutor was well into his cross-examination of Jansen when the discussion with the court took place. That conference lasted until the end of the court day and was resumed the following morning. Thus, the jury had heard

2. The transcript reads:
"Q I believe you stated yesterday on direct examination, Mr. Jansen, that you had never been convicted of a crime, is that correct?
"A Yes, it is.

"Q Mr. Jansen, are you the same John [J]ansen who on August 27, 1964 was convicted of the crime of criminal damage to property in a case entitled People of the State of Illinois v. John Jansen?
"A *I pled guilty to damaging property,* yes."

the defendant's denial a substantial period of time before the defense attorney proposed that the exchange be struck. The purported fact had been placed without question before the jury, and we are unaware of any basis for saying that it was error not to strike out the question and answer, particularly in the belated posture here involved. If counsel had listened to his own words and had sought immediately to correct them, the result might have differed. He apparently did neither.

The Government acknowledges that, absent defense counsel's question on direct, the prosecution would have been precluded from cross-examining Jansen about his prior misdemeanor conviction. It argues, however, that once the matter was raised, the prosecutor had a duty to impeach the veracity of defendant's answer. The Government distinguishes this limited use of the misdemeanor conviction from an assault on Jansen's general credibility as a witness. A defendant's general credibility as a witness can be impeached only by a felony conviction. See United States v. Bishop, 457 F.2d 260, 262 (7th Cir. 1972).[3] We also note that the court, in its charge, instructed the jury as to the limited purpose for which it was to consider the misdemeanor conviction.

Because Jansen made his statement on direct examination, the present case falls outside the rule that a witness may not be impeached by contradiction as to collateral or irrelevant matters elicited on cross-examination, see, e. g., United States v. Lambert, 463 F.2d 552, 557 (7th Cir. 1972). Further, although we are aware of Wigmore's argument against allowing contradiction of all extraneous or volunteered assertions made on direct examination, 3A Wigmore, Evidence § 1007 (Chadbourn rev. 1970), decisions by the United States Supreme Court and by several courts of appeals, among them this court, strongly suggest that the impeachment here was permissible. See, e. g., Walder v. United States, 347 U.S. 62, 74 S.Ct. 354, 98 L. Ed. 503 (1954); United States v. Rosenfield, 469 F.2d 598, 600 (3d Cir. 1972); United States ex rel. Walker v. Follette, 443 F.2d 167 (2d Cir. 1971); United States v. Holtzman, 440 F.2d 923 (7th Cir. 1971); United States v. Colletti, 245 F.2d 781 (2d Cir. 1957), cert. denied, 355 U.S. 874, 78 S.Ct. 125, 2 L.Ed. 2d 78. We therefore hold that the trial court did not err in overruling the defendant's objections to the impeachment questions.

On redirect examination, defense counsel attempted to rehabilitate his client. However, the court sustained objections to three of the five questions counsel posed. The result was that Jansen was allowed to respond only to queries whether he had ever been convicted of a felony and what his plea to the misdemeanor charge had been.[4]

Although the circuits differ as to the extent to which they permit a witness, on redirect examination, to explain a conviction shown for impeachment purposes, most leave such rehabilitation to the discretion of the trial judge. E. g., United States v. Pinna, 229 F.2d 216, 219 (7th Cir. 1956). The cases we have found that treat this problem, however, involve the use of a prior conviction to impeach a witness's general credibility.[5] Here, through an

---

3. The scope of the impeaching crime is often said to include a misdemeanor involving moral turpitude. McCormick, Handbook of the Law of Evidence § 43, at 90 (1954). While the misdemeanor of which Jansen was convicted is a crime, there is no contention that it involved moral turpitude.

4. Counsel dropped the matter and took no other tacks at rehabilitation. Also, there was no formal offer to prove. However, such an offer is unnecessary where it is clear what the substance of the proposed evidence would be. See United States v. Dellinger, 472 F.2d 340, 384 (7th Cir., 1972).

5. Wigmore's comment that "it would seem a harmless charity to allow the witness to make such protestations on his own behalf as he may feel able to make with a due

admission elicited from the defendant, the prosecutor in effect corrected misinformation that Jansen had given on his direct examination. The wisdom of limiting discussion about the misstatement is thus much more obvious under these circumstances than when a party has tried to discredit a witness's character. If not disallowed, defense counsel's questions on redirect would have opened a clearly collateral matter. We therefore cannot agree that the trial judge abused his discretion in rejecting two of the "rehabilitative" questions: how old Jansen had been at the time of the conviction and what sentence he had received.[6]

As for the third disallowed question—"When I asked you whether you had been convicted of a crime yesterday, what did you understand me to mean?"—we concur with the Government that the form of the question was bad. It called for Jansen's subjective conclusion about his attorney's intention.

Jansen also contends that the prosecutor made improper statements during closing argument about defendant's credibility and that the trial judge made improper comments when ruling on defendant's objection to those statements.

We find no reversible error. First, the prosecutor's inadvertent reference to "United States v. Jansen" rather than to "The People of the State of Illinois v. Jansen," the accurate title of the defendant's misdemeanor case, could not have confused the jury or prejudiced Jansen's right to a fair trial. Second,

the Government attorney used the impeaching conviction as but one of several examples of what he considered to have been "lies" by the defendant. A prosecutor is allowed to comment on the credibility of a defendant who takes the witness stand. United States v. Deloney, 389 F.2d 324, 326 (7th Cir. 1968), cert. denied, 391 U.S. 904, 88 S.Ct. 1652, 20 L.Ed.2d 417. Cf. United States v. Porter, 432 F.2d 548 (9th Cir. 1970), cert. denied, 400 U.S. 928, 91 S.Ct. 192, 27 L.Ed.2d 188. Third, the prosecutor's rather ill-considered statement that by this false testimony Jansen had "perjured himself" was objected to, and the objection as made was sustained. When so ruling, the trial judge did not, as Jansen charges, imply that he agreed with the prosecutor's characterization of the defendant's testimony. Rather, as we read the record, the judge was explaining why he was sustaining the objection and why the jury should ignore the Government's statement.

At trial, Jansen had two intended lines of defense: (1) his use of force had been so minimal as to be legally insignificant, and (2) emotional distress had caused him to act as he had on the afternoon of July 8, 1971, and he therefore had lacked the intent necessary to commit the crime charged. On appeal, the defendant emphasizes the second argument. He maintains that the trial court precluded the effective presentation of this "defense" by not permitting him to show that (a) the amount of the tax due was in controversy; (b) a certi-

---

regard to the penalties of perjury" also does not refer to the limited impeachment situation present in the instant case. 4 Wigmore, Evidence § 1117, at 191 (3d ed. 1940 and 1970 Supp.).

6. We note that the jurors had been given information which could have enabled them to calculate Jansen's age at the time of his misdemeanor conviction: Jansen had testified on direct that he was 29 years old, and, on cross-examination, he had said that he was the same John Jansen who had been convicted in 1964.

The question about the sentence imposed was clearly intended to diminish the sig-

nificance of the conviction. If Jansen had been allowed to answer, the Government might then have contended that it, too, should be allowed to go into the details surrounding the misdemeanor conviction in order to rebut the misleading inferences that such testimony might create. According to the Government, the misdemeanor charge had resulted from plea bargaining; the charge originally had been burglary and arson. In our opinion the district court properly curtailed the expeditions into these collateral and potentially confusing extraneous matters. Cf. United States v. Dow, 457 F.2d 246, 250 (7th Cir. 1972).

fied check in the amount of the tax supposedly due was in fact delivered at about 4:20 p. m. but was refused by the agents; and (c) the defendant later received a refund of approximately $3500. In addition to the claim that the court ruled erroneously on these evidentiary matters, the defendant also contends that the court stated repeatedly in the presence of the jury that the proffered defense had nothing to do with the crime charged.

■ We find no reversible error. We first note that at least matters (a) and (c) were before the jury through Jansen's own testimony. More importantly, however, we disagree that the three points, even if true, constitute a defense to a charge of violating 18 U.S.C. § 111 or negate the existence of an intent forcibly to assault, resist, impede, etc. This court's decision in United States v. Spingola, 464 F.2d 909 (7th Cir. 1972), upon which Jansen relies, is inapplicable to this case.

"The purpose of this section [§ 111] is to provide federal officers the protection of federal courts when such officers are performing their duties." United States v. Johnson, 462 F.2d 423, 427 (3d Cir. 1972). The statute's aim is frustrated if an individual is allowed to resist federal agents when engaged in their official duties because the individual believes he owes less than the amount demanded. See United States v. Johnson, *supra*, where the Third Circuit upheld the trial court's refusal to admit evidence tending to show that defendant, who had blocked the exit, was the true owner of property seized by IRS agents.

Jansen, however, seeks to avoid the force of section 111 by arguing that his motive in preventing Grant and Morris from leaving the tavern was to aid, not obstruct, the IRS officers in the performance of their duties, that is, the collection of delinquent taxes. The defendant mistakenly assumes that he had a right to delay the seizure of the premises; actually, the officers had waited until 4 p. m. as an accommodation to Jansen. We reject the defendant's proposition that a private individual may decide how and when federal officers acting within the scope of their authority should carry out their duties. This is not the proper criterion for determining whether the individual has breached section 111.

■ As for the trial judge's supposed negative comments on Jansen's theory of defense, the transcript citations to which defendant refers us reveal no such prejudicial remarks.

■ Jansen next seeks reversal on the basis of the district court's charge to the jury. Most of the contentions are within the framework of reference of "plain error," which ordinarily, as it does here, connotes a failure by trial counsel to comply with the salutary purpose of Rule 30, Fed.R.Crim.P., to bring to the attention of the trial judge claimed deficiencies of both instructions to be given and those refused. Here, trial counsel failed to tender any instructions, and, although counsel were afforded an opportunity to object both before and after the giving of the charge, the defense's minimal objections were not of a nature to point out to the experienced trial judge the errors which were first articulated on this appeal. In this context, we would be rendering scant service either to the letter or to the spirit of Rule 30 if we adhered to any lesser standard than that suggested in the Webster definition of "plain," *i. e.*, evident or obvious. On that basis, we find the contentions advanced to be without merit.

■ Jansen attacks the court's "inference from conduct" general intent instruction as undermining the alleged defense of lack of specific intent. Without reaching the always troublesome question of whether specific intent is required for proof of guilt of a particular crime,[7] we note that the district court

7. *Cf.* Finn v. United States, 219 F.2d 894, 901 (9th Cir. 1955), cert. denied, 349 U.S. 906, 75 S.Ct. 583, 99 L.Ed. 1242.

did, in its charge, state the necessity of proof of specific intent before a conviction could be had, utilizing in this respect the La Buy instruction, 33 F.R.D. 523 (1963).

■ Jansen also attacks the court's instruction on the burden of proof as conveying "a sense of rebuke for [defendant's] daring to plead not guilty. . . ." Jansen's interpretation of the court's instruction is unwarranted as the challenged statements were part of a full discussion concerning the presumption of innocence and reasonable doubt.

■ Jansen attacks the failure of the court to give an instruction pertaining to the credibility of witnesses generally while including in its charge reference to the fact that "the defendant's testimony is to be judged in the same way as that of any other witness, bearing in mind that he is the defendant in the case and of course has an interest in the result of the trial." At best, trial counsel may have mildly and ambiguously suggested that the defendant is no different than any other witness, but, of course, he is different in that he does have an interest. We do not know why the general credibility of witnesses instruction was not given, but we do know that trial counsel neither suggested nor tendered it. While counsel on this appeal were not the trial counsel, and perhaps thereby are freer in finding fault, we are unable to agree with the contentions that the instructions deprived Jansen of a fair trial.

Finally, Jansen argues that the trial judge, in sentencing him, imposed "extra punishment" for his having elected to exercise his rights to plead not guilty and to have a jury trial. The judge sentenced Jansen to one year in prison and fined him $1500 on each count, the terms of imprisonment to run concurrently.

■ For this argument, Jansen relies on certain comments the judge made. If the judge did penalize the defendant for pleading not guilty, he, of course, acted improperly. See United States v. Lehman, 468 F.2d 93, 110 (7th Cir. 1972), cert. denied, 409 U.S. 967, 93 S.Ct. 273, 34 L.Ed.2d 232. We have carefully examined the pertinent portion of the transcript, however, and we conclude that the remarks, when read in context, do not bear the construction that defendant seeks to place upon them.

We first note that, prior to imposing sentence and before making the allegedly objectionable comments, the judge expressly complimented defense counsel: "I think your way of . . . defending the case was a wise one. If it could have been won, and I don't think it could have been won, you chose the right way to do it." Second, we find the group of statements ending with "The feeling of contrition here has come too late" to be ambiguous. A reasonable interpretation is that the judge "considered a policy of leniency following a plea of guilty to be proper but that sentence concessions flowing from such a plea are inapplicable to the full trial situation." *Lehman, supra,* 468 F.2d at 110. Third, the final comments of which Jansen complains, particularly "He has chosen the wrong course in this case. . . . He has aggravated his offenses," came after the sentence had been pronounced and reflected, we believe, the judge's impatience with defense counsel's continuing to discuss mitigating circumstances. The judge considered the matter closed.

We have examined the other claimed errors and find them without merit. Accordingly, we affirm the conviction of John Jansen.

Affirmed.