Ronnie Earl NORRIS, Sr., Appellant,

v.

COMMONWEALTH OF KENTUCKY, Appellee.

No. 2001–SC–0193–MR.

Supreme Court of Kentucky.

Nov. 21, 2002.

Richard Hoffman, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

A.B. Chandler, III, Attorney General of Kentucky, William Robert Long, Jr., Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

JOHNSTONE, Justice.

Appellant, Ronnie Earl Norris, Sr., was convicted by a Fayette Circuit Court jury of two counts of incest against his daughter. Appellant received the maximum sentence on each count: ten years' imprisonment, to be served consecutively. He appeals as a matter of right. We reverse and remand for a new trial.

On January 18, 2000, Detective Brett Goode of the Lexington Police Department received a report alleging that Appellant had engaged in sexual intercourse with his minor daughter, A.N., who was living in foster care at the time of the accusation. She had been removed from her family home by the Cabinet for Families and Children because she had conceived a child fathered by her brother, Ronnie Norris, Jr. By the time of Appellant's trial, Appellant's wife, Fern Norris, had been tried and acquitted of incest with her son, Ronnie Jr. Appellant did not testify on his own behalf, but his defense was that he was physically incapable of committing incest with A.N. because he had recently had major leg surgery and that A.N. fabricated the allegations to avoid being forced to leave her foster home, where she was well-adjusted and happy.

Norris appeals his conviction, claiming four errors: (1) the trial court improperly refused to admit testimony that a defense witness, Appellant's wife, had been acquitted of a charged sex offense; (2) the trial court improperly admitted evidence of an alleged sex offense by Appellant against another daughter; (3) the trial court should have granted Appellant's directed verdict motion; and (4) the trial court did not grant him sufficient peremptory challenges.

**I. Fern Norris's Acquittal from Incest Charges**

Appellant's first claim is that the trial court erred when it refused to allow him to elicit testimony that Fern Norris had been acquitted of incest with her son, Ronnie Jr., in a separate case tried prior to Appellant's case. At trial, Detective Goode testified for the prosecution. During cross-examination, defense counsel questioned Goode about how he typically handled a

case. Goode responded that he started by examining the allegation, which he then offered to read to the jury. Defense counsel permitted Goode to proceed and he read the allegation, which first described the victim's age, address, and foster care arrangement. Goode concluded the allegation: "And this is what the allegation states, that the father has done everything sexually to her [A.N.] that her brother did. . . . And, also, Ronnie Jr., . . . has had a sexual relationship with his mother, Fern Norris . . . ."

After Detective Goode read the allegation, defense counsel concluded the cross-examination. The prosecutor then requested a bench conference, during which she informed the court that she wanted to re-examine Detective Goode concerning, among other things, the alleged incest between Mrs. Norris and Ronnie Jr. The prosecutor claimed that defense counsel had already touched upon that line of inquiry. In addition to reading the allegation of incest between Mrs. Norris and Ronnie Jr., Detective Goode had testified during cross-examination that a statement by Jeanie Benton—the substance of which was not disclosed—"broke" Ronnie Jr. into confessing the various sexual offenses he alleged in his statement. Ms. Benton's statement included an allegation that she witnessed Mrs. Norris and Ronnie Jr. engaged in sexual intercourse. The prosecutor claimed that since the subject was now broached, she should be allowed to inquire about it. Defense counsel did not object.

On redirect examination, the prosecutor asked several questions about the investigation of the charges of incest by Fern Norris against Ronnie Jr. For example, the prosecutor asked Detective Goode: "So, [Ronnie Jr.] finally came around and admitted to you that he had had sex with his mother?" Goode answered affirmatively. And later, the prosecutor asked:

"Is Jeanie Benton [a witness] talking about seeing Ronnie Norris, Jr., and his mother having sexual intercourse, is that right?" Goode again confirmed.

On recross, defense counsel attempted to rehabilitate Fern Norris, since she was to testify later, by eliciting a statement by Detective Goode that Mrs. Norris had been acquitted of the incest charges. In a bench conference, the prosecutor objected that the outcome of Mrs. Norris's case was irrelevant and inadmissible in Appellant's case. Defense counsel responded that it was relevant because the prosecutor created the perception that Mrs. Norris committed incest even though she had, in fact, been acquitted of those charges. The trial court sustained the objection, suppressing the acquittal evidence.

Later in the trial, Mrs. Norris testified on her husband's behalf. She was one of only two defense witnesses, the other witness being a surgeon who testified that he had performed surgery on Appellant's leg, shortly before the alleged incest occurred. During Mrs. Norris's testimony, the prosecutor requested to approach the bench, where she addressed the acquittal evidence: "I don't know if you've [defense counsel] talked to her [Mrs. Norris] about it but she's not, well she's not, she's very liable to blurt out that she was acquitted. And the court has already ruled that that's not admissible. So, pull her over here and tell her (inaudible) on the witness stand (inaudible)." While the court's ruling was inaudible, it appears that the objection was sustained because defense counsel immediately conferred with Mrs. Norris away from the jury.

Appellant claims that he should have been able to introduce evidence of his wife's acquittal and that the trial court's decision to suppress that evidence was error. We agree. At the outset, the Commonwealth contends that Appellant's ar-

gument is not preserved because, the Commonwealth claims, Appellant made a different argument at trial than on appeal. On the contrary, Appellant renews on appeal the argument he made at trial: "I think [the evidence] is very relevant, [the prosecutor] has created the perception that Fern [committed incest] when she has been acquitted in Fayette County."

Appellant concedes, and the Commonwealth reiterates, that ordinarily evidence of a prior acquittal is inadmissible. Neither party, however, correctly cites any authority for this proposition. Yet there is case law that warns that it is improper to show that a co-indictee has already been convicted [or acquitted] under the indictment. *Martin v. Commonwealth*, Ky., 477 S.W.2d 506, 508 (1972); *see also Tipton v. Commonwealth*, Ky., 640 S.W.2d 818, 820 (1982). The reason for this common law rule is that whether the defendant committed a [specific crime] is not aided in the slightest by the admission of evidence of the fact that another jury concluded that another defendant had [or had not] committed the [same crime]. *Com. v. Meredith*, 493 Pa. 1, 425 A.2d 334, 337–38 (1981) (quoting *Com. v. Amato*, 449 Pa. 592, 297 A.2d 462 (1972)).

Appellant draws our attention to two exceptions to this rule. *See Meredith*, 425 A.2d at 338 (evidence of witness codefendant's acquittal permitted for limited purpose of removing cloud cast over witness's testimony by commonwealth evidence indicating witness's involvement in the alleged crimes); *see also Arizona v. Farmer*, 126 Ariz. 569, 617 P.2d 521, 524–25 (1980) (when the state was allowed to ask a witness [acquitted codefendant] whether he had been indicted for purpose of showing the possible bias and motive of the witness ... the defense should have been allowed to show that fear of pending prosecution was not the motive.) But we need not search for or create an exception to the rule: the rule is simply inapposite to Appellant's case. All of the cases cited, *supra*, refer to codefendants or co-indictees, a relationship that Mrs. Norris did not share with Appellant. Not only does the rule not apply, but there is no other good reason for the evidence of Mrs. Norris's acquittal to be suppressed. That is, the purpose served by the rule, which prohibits improperly bolstering the defendant's case with inadmissible evidence from another case, is not advanced by suppressing Mrs. Norris's acquittal.

■ This case, instead, presents the doctrine of curative admissibility, commonly known as "opening the door." *See* R. Lawson, *The Kentucky Evidence Law Handbook*, § 1.10, 30–33 (3d ed. Michie 1993). Wigmore distilled the issue to this question: "If the one party offers an inadmissible fact that is received, may the opponent afterwards offer similar facts whose only claim to admission is that they negative or explain or counterbalance the prior inadmissible fact?" *See* 1 Wigmore, *Evidence in Trials at Common Law*, 731 (Tillers' rev.1983). In a typical case, a witness will make an inadmissible assertion and the opposing party is then permitted to introduce evidence to the contrary. *See United States v. Jansen*, 475 F.2d 312 (7th Cir.1973) (Defendant improperly asserted that he had never been convicted of a crime; prosecutor then permitted to introduce otherwise inadmissible evidence that defendant had earlier been convicted of a misdemeanor.); *Dewey v. Funk*, 211 Kan. 54, 505 P.2d 722 (1973) (In a paternity action the mother improperly testified that she had been a virgin prior to intercourse with the alleged father. Kansas Supreme Court ruled that the defense should have been permitted to introduce otherwise inadmissible evidence that the

mother had admitted to intercourse with other men.)

■ In this case, despite the prosecutor's claim to the contrary, the evidence of Mrs. Norris's alleged incest with Ronnie Jr. was inadmissible character evidence. It did nothing more than insinuate that Appellant was probably guilty of incest with his daughter because everybody in the family routinely committed incest with each other. The fact that Norris did not—and on appeal still does not—object to the evidence did not make it admissible. The prejudice against Mrs. Norris and, consequently, the damage to Appellant, was substantial. While this case is a little different from the norm, in that the party that seeks to cure, Norris, technically opened the door, we agree with defense counsel's remarks to the prosecutor: "I cracked the door and you threw it open, I say we can walk through . . . (inaudible)." Or, to borrow the analogy used by our predecessor Court: "[T]he appellants, having opened the book on the subject, were not in a position to complain when their adversaries sought to read other verses from the same chapter and page." *Harris v. Thompson*, Ky., 497 S.W.2d 422, 430 (1973).

■ Evidence of Mrs. Norris's acquittal should have been admitted to attempt to restore her character in the jurors' eyes. Concerning curative evidence, the Kansas Supreme Court in *Dewey* held that ". . . the opponent may reply with similar [inadmissible] evidence *whenever it is needed for removing an unfair prejudice which might otherwise have ensued from the original evidence . . . .*" 505 P.2d at 724 (emphasis in original). Defense counsel's failure to object does not alter our conclusion. *See* R. Lawson, § 1.10 IV, at 31–32 (3d ed. Michie 1993) (citing 1 Louisell & Mueller, *Federal Evidence,* 51–52) (1977 & 1989 Supp.) ("A leading authority on federal evidence law asserts that objections always carry an onus, that a party should not have to object in order to retort in kind to inadmissible evidence, and that modern federal cases support this conclusion.") This is especially true here, considering that the acquittal evidence, unlike the curative evidence in cases like *Jansen* and *Dewey, supra,* did nothing to discredit the evidence against Norris but merely neutralized the harmful effect of the Commonwealth's character attack. In other words, the Commonwealth's case against Norris would not have been diminished in the slightest by the acquittal evidence. Suppression of this evidence was error; because Mrs. Norris was the central witness for Appellant, we cannot say the error was harmless. Accordingly, we reverse and remand this case for a new trial. On retrial, barring any unforeseen circumstances, evidence of the incest charges against Mrs. Norris should not be admitted. If for some reason the evidence is admitted, however, evidence of Mrs. Norris's acquittal would then be admissible.

## II. Taped Interview of Ronnie Jr. Accusing Appellant of Incest with Another Daughter

We address Appellant's other arguments to the extent that they might recur on retrial. During his investigation, Detective Goode interviewed Ronnie Jr. about the alleged abuse committed by Ronnie Jr.'s father and mother. At trial, Ronnie Jr.'s testimony contradicted his previous taped statements to Detective Goode. Ronnie Jr. claimed that his earlier statements inculpating his father and mother had been coerced by Detective Goode. The prosecutor introduced Ronnie Jr.'s taped statements as impeachment evidence, with the stated purpose of disproving coercion. But the portion of tape played by the prosecution contained statements about Mrs. Norris's alleged incest

with Ronnie Jr. as well as statements about Appellant's alleged incest with both A.N. and one of Appellant's other daughters, K.N. Appellant was never charged with incest against K.N. Appellant claims that Ronnie Jr.'s taped statements referring to Appellant's alleged incest with K.N. violated KRE 404(b).

After examining the taped statement, it appears that some parts of the statement might be inadmissible; however, we decline to make a definitive ruling on this evidence because of the changing circumstances that could occur on retrial. Of course, the most obvious reason to exclude the evidence on retrial would be if Ronnie Jr.'s testimony at trial is consistent with his taped statement. But also, the prosecutor argued that the taped statement should be admitted because there was already evidence before the jury that Appellant had committed incest against K.N. If that evidence is not in the record on retrial, that fact would militate against admission of the taped statement, or portions of it. Instead of making a ruling, we remind the trial court to follow the analysis we outlined in *Bell v. Commonwealth,* Ky., 875 S.W.2d 882 (1994), for examining the admissibility of KRE 404(b) evidence. And, as Professor Lawson points out, in exercising its discretion under Rule 403, a trial court must consider in the balancing test evidentiary alternatives (other available evidence to prove the fact in issue), ... R. Lawson, *The Kentucky Evidence Law Handbook,* § 2.25 (3d ed. Michie 1993, 2000 supp.) (citing *Old Chief v. United States,* 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997)). Finally, as we cautioned in *Bell,* the trial court should include in the record the reasons for its finding on admissibility.

## III. Directed Verdict Motion

Appellant also claims that the trial court erred by denying his motion for a directed verdict. Appellant accurately asserts that A.N.'s testimony about Appellant's incest was undeniably equivocal: A.N. testified both that Appellant did have sexual intercourse with her and that he did not. And her version of the events seemed to change several times throughout her examination and cross-examination, especially with respect to whether intercourse with her father occurred. Appellant also points out that Ronnie Jr.'s testimony indicated that he did not witness Appellant commit incest with A.N.

The standard of review concerning sufficiency of the evidence is stated in *Commonwealth v. Benham,* Ky., 816 S.W.2d 186, 187 (1991):

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given such testimony.

Appellant was charged with two counts of incest. According to the evidence, one count allegedly took place in the bedroom and the other in the computer room. Apart from her initial response, that Appellant did not have sexual intercourse with her, A.N. did not waver concerning her claim that Appellant committed incest with her in the bedroom. The evidence on this count unquestionably meets the directed verdict standard. The evidence concerning the second count is more equivocal, but no less admissible. Although A.N.'s version of events in the computer room changed during her testimony, she

ultimately affirmed that incest occurred. In other words A.N.'s testimony suffered from credibility problems. But the credibility of a witness and weight to be given to sworn testimony are for the jury to decide. *Young v. Commonwealth*, Ky., 50 S.W.3d 148, 165 (2001); *Commonwealth v. Smith*, Ky., 5 S.W.3d 126, 129 (1999). Moreover, Ronnie Jr.'s impeachment testimony, introduced on audiotape, corroborated A.N.'s claim of incest in the computer room. *Jett v. Commonwealth*, Ky., 436 S.W.2d 788 (1969) (prior inconsistent statements serve as both impeachment and substantive evidence.)

Appellant's final claim is without merit.

For the foregoing reasons, the judgment of the Fayette Circuit Court is reversed and this case is remanded to the Fayette Circuit Court for a retrial consistent with this opinion.

LAMBERT, C.J.; COOPER, GRAVES, and STUMBO, JJ., concur.

KELLER, J. dissents by separate opinion, with WINTERSHEIMER, J., joining that dissent.

KELLER, Justice, dissenting.

I respectfully dissent from the majority opinion because Appellant did not properly preserve for appellate review his allegation that the trial court erred when it sustained the Commonwealth's objections and thereby prevented Appellant from questioning witnesses regarding his wife's acquittal of incest charges. In my view, this case is indistinguishable from *Commonwealth v. Ferrell*,[1] where the Appellee alleged error in the trial court's ruling sustaining the Commonwealth's objection to a question posed to him by his trial counsel, but did "not suppl[y] us with the answer to that question by means of avowal."[2] In *Ferrell*, we unequivocally stated that "a party must offer an avowal *by the witness* in order to preserve for appellate review an issue concerning the exclusion of evidence,"[3] and, in so doing, we merely reaffirmed existing precedent interpreting the KRE 103 preservation rule.[4] As the record before us does not contain avowal testimony from either Detective Goode or Appellant's wife, this allegation of error is not properly preserved for our review. Accordingly, I would affirm the judgment of the Fayette Circuit Court.

WINTERSHEIMER, J., joins.

---

1. Ky., 17 S.W.3d 520 (2000).

2. *Id.* at 525.

3. *Id.* at 525 (emphasis in original).

4. *See Partin v. Commonwealth*, Ky., 918 S.W.2d 219, 223 (1996) ("Counsel's version of the evidence is not enough. A reviewing court must have the words of the witness.").