William **CHESHER**, Appellant

v.

**COMMONWEALTH of Kentucky,**
**Appellee**

**NO. 2014-CA-000759-MR**

Court of Appeals of Kentucky.

RENDERED: MARCH 4, 2016; 10:00 A.M.

BRIEFS FOR APPELLANT: Shannon Dupree, Assistant Public Advocate, Frankfort, Kentucky

BRIEF FOR APPELLEE: Jack Conway, Attorney General of Kentucky, David W. Barr, Assistant Attorney General Frankfort, Kentucky

BEFORE: ACREE, CHIEF JUDGE; J. LAMBERT AND TAYLOR, JUDGES.

*OPINION*

LAMBERT, J., JUDGE:

William Chesher has directly appealed from the final judgment of the Metcalfe Circuit Court convicting him of first-degree manslaughter and tampering with physical evidence, and sentencing him to a total of eighteen years' imprisonment. On appeal, Chesher seeks review of the circuit court's denial of his *Batson*[1] challenge and the introduction of testimony from a police officer. Having carefully reviewed the record and the parties' arguments in their briefs, we affirm.

On the morning of June 4, 2013, Chesher went to the home of Ronnie and Karen Hiser in Edmonton, Kentucky. Chesher and Karen had been communicating through Facebook, text messages, and telephone conversations over the previous six months, and they had entered into a sexual affair in the weeks prior to that date. Karen told Chesher that she had not been happy in her marriage to Ronnie since her son passed away nine years ago and that she intended to leave him. The police had responded to several domestic abuse calls due to arguments between Karen and Ronnie, but Karen did not express any fear of him. Claiming to believe that Ronnie had been abusing and intended to kill Karen, despite her explanations for her various injuries that did not involve Ronnie, Chesher went to the Hiser residence to get Karen. Instead, Chesher shot Ronnie between his eyes through the storm door. Ronnie passed away from the gunshot wound the next day. Kentucky State Police responded to a 911 call at the residence after the shooting, and Karen identified Chesher as the shooter. Chesher left the scene after the shooting and threw the weapon in a pond. Upon questioning by the police, Chesher admitted to

---

1. *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

shooting Ronnie once in the head and disposing of the weapon, which the police later recovered in the pond. Chesher was arrested for first-degree assault and tampering with physical evidence. After Ronnie's death, Chesher was arrested for his murder.

On the basis of these facts, the Metcalfe County grand jury indicted Chesher on charges of murder pursuant to Kentucky Revised Statutes (KRS) 507.020 and of tampering with physical evidence pursuant to KRS 524.100. Following a trial, where Chesher presented the defenses of self-protection and protection of another, the jury found Chesher guilty of the lesser-included crime of first-degree manslaughter and tampering with physical evidence for disposing of the gun. The jury recommended a fifteen-year sentence on the manslaughter conviction and a three-year sentence on the tampering with physical evidence conviction to run consecutively for a total of eighteen years. The circuit court entered a judgment finding Chesher guilty and sentencing him in accordance with the jury's recommendation. This direct appeal now follows.

On appeal, Chesher raises three issues. The first issue addresses the propriety of the circuit court's ruling on his second *Batson* challenge. The second and third issues address the testimony of Officer Maxwell. One argument posits that the Commonwealth elicited improper bolstering testimony from him with regard to Karen's credibility, and the other posits that the officer was an unannounced witness who should not have been called without first determining whether the jurors had any connection to him.

First we shall address Chesher's *Batson* argument. Chesher asserts that the Commonwealth violated *Batson*'s prohibition against purposeful discrimination when the prosecutor struck an African–American female from the jury using a peremptory strike. When Chesher objected to the striking of this juror, the court clerk stated that she (the juror) had not made any statements. The prosecutor pointed out that two African–Americans remained in the jury pool after striking this juror, meaning that the decision to strike her was not based upon her race. The prosecutor stated instead that she was stricken based upon her demeanor during the *voir dire* process, noting that she did not appear to be interested in the proceedings. In response, Chesher responded that several members of the jury had been staring into space. The circuit court ultimately determined that the prosecutor had provided a racially neutral reason for striking this juror and denied Chesher's *Batson* challenge.

In *McPherson v. Commonwealth*, 171 S.W.3d 1, 2–3 (Ky.2005), the Supreme Court of Kentucky addressed the law surrounding equal protection and the use of peremptory strikes, summarizing this area of the law as follows:

A prosecutor's purposeful discrimination in jury selection violates the Fourteenth Amendment's equal protection clause. Though initially invoked to challenge discrimination based on race, the Amendment's protections extend to discrimination based on gender.

A three-prong inquiry aids in determining whether a prosecutor's use of peremptory strikes violated the equal protection clause. Initially, discrimination may be inferred from the totality of relevant facts associated with a prosecutor's conduct during a defendant's trial. The second prong requires a prosecutor to offer a neutral explanation for challenging those jurors in the protected class. Finally, the trial court must assess the plausibility of the prosecutor's explanations in light of all relevant evi-

dence and determine whether the proffered reasons are legitimate or simply pretextual for discrimination against the targeted class. [Citations in footnotes omitted.]

*See also Saylor v. Commonwealth,* 144 S.W.3d 812, 816 (Ky.2004) ("Although Appellant is Caucasian, it is well settled that he has standing to raise the Equal Protection issue. *Campbell v. Louisiana,* 523 U.S. 392, 118 S.Ct. 1419, 140 L.Ed.2d 551 (1998); *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991)."). We also recognize that a "trial court's decision is entitled to great deference[,]" *McPherson,* 171 S.W.3d at 3, and "will not be disturbed unless clearly erroneous." *Washington v. Commonwealth,* 34 S.W.3d 376, 380 (Ky.2000).

▪ ■ We must agree with the Commonwealth that Chesher failed to make a *prima facie* showing of purposeful discrimination because two African–Americans remained in the jury pool after this particular juror was stricken. Therefore, he failed in his burden of establishing a *Batson* violation. Even if he had met this burden of showing purposeful discrimination, the Commonwealth offered a race-neutral reason for striking her, which was her demeanor and lack of interest in the proceedings. While Chesher argues that the circuit court failed to address the third prong and assess the plausibility of the prosecutor's explanation, this consideration is implicit in the court's decision to deny the *Batson* challenge. The court would have considered the totality of the jury selection process in making this decision, which would necessarily have included its observation of the potential jurors, any responses or lack of response from this juror, and the fact that two African–American jurors remained in the jury pool and served on the jury.

We are required to give great deference to the circuit court's decision on a *Batson* challenge. Based upon the record of the trial, we hold that the circuit court did not commit any clear error in denying Chesher's *Batson* challenge. Accordingly, we affirm on this issue.

Next, we shall address the testimony of Kentucky State Police Officer Robert Maxwell, who testified for the Commonwealth. Chesher first argues that the Commonwealth elicited improper testimony from Officer Maxwell that vouched for and bolstered Karen's testimony. We shall review this evidentiary ruling for abuse of discretion. *McDaniel v. Commonwealth,* 415 S.W.3d 643, 655 (Ky.2013). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999).

Officer Maxwell responded to the Hisers' residence for a welfare check at Chesher's request on May 8, 2013, approximately one month prior to the shooting at issue in this case. Ronnie and Karen were both at home when Officer Maxwell arrived. He spoke to Karen alone, outside of Ronnie's presence, and he explained the complaint that she was being held against her will and that Ronnie would not let her leave. Karen told Officer Maxwell that although she and Ronnie had issues in the past, she was fine and did not need the police to do anything. After speaking briefly with Ronnie, Officer Maxwell left. On cross-examination, Officer Maxwell stated that he often responded to domestic situations and would sometimes find that one party would not want to talk about it, depending on the situation. He explained that as the reason he spoke to Karen alone. When asked whether a party might not tell him about what was really going on even when separated from the other party,

Officer Maxwell stated that this might be true, "but I have been doing this for 19 years and I get a pretty good feel, you know, if that is the case. I do try to get to what the truth is." On redirect examination, the Commonwealth asked Officer Maxwell if he thought Karen was holding anything back. His answer was no. Chesher objected to this question, which the court overruled based upon the previous question asked during Chesher's cross-examination.

■ "Generally, a witness may not vouch for the truthfulness of another witness." *Stringer v. Commonwealth,* 956 S.W.2d 883, 888 (Ky.1997), citing *Hall v. Commonwealth,* 862 S.W.2d 321, 323 (Ky. 1993), and *Hellstrom v. Commonwealth,* 825 S.W.2d 612, 614 (Ky.1992). First, we agree with the Commonwealth that Officer Maxwell was not commenting upon Karen's testimony that she was not afraid of Ronnie, but rather was sharing his observation and belief that she was not holding any information back when he spoke with her during the welfare check one month prior to the shooting. Even if the question were improper, Chesher's question on cross-examination regarding whether a person would tell him what was going on even when separated effectively opened the door to this question. *See Metcalf v. Commonwealth,* 158 S.W.3d 740, 746 (Ky. 2005), as modified on denial of reh'g (Apr. 21, 2005), citing *Norris v. Commonwealth,* 89 S.W.3d 411, 414 (Ky.2002); Lawson, *The Kentucky Evidence Law Handbook,* § 1.10[5], at 43 (2d ed.1984). ("the doctrine of 'curative admissibility,' *i.e.,* when one party introduces improper evidence, ... 'opens the door' for the other party to introduce improper evidence in rebuttal whose only claim to admission is that it explains or rebuts the prior inadmissible evidence."). Chesher was attempting to elicit testimony that would undermine Karen's in-court testimony by showing that she had not been forthcoming with Officer Maxwell during the welfare check. This permitted the Commonwealth to ask Officer Maxwell the follow up question regarding whether he thought Karen was holding anything back. Accordingly, we find no abuse of discretion in the circuit court's decision to overrule Chesher's objection on this issue.

Next, we shall consider Chesher's argument that the circuit court should not have permitted Officer Maxwell to testify. Again, we shall review this evidentiary ruling for abuse of discretion. When the Commonwealth called Officer Maxwell, Chesher objected and moved to exclude him as a witness, arguing that he had not been identified as a witness during *voir dire* and that the jurors had never been asked if they knew him or were related to him. The circuit court denied Chesher's motion, reasoning that the Commonwealth was not required to ask about all the witnesses it intended to call.

■ Chesher cites to *Sanborn v. Commonwealth,* 892 S.W.2d 542, 552 (Ky.1994), *Collins v. Galbraith,* 494 S.W.2d 527 (Ky. 1973), and *Peyton v. Commonwealth,* 253 S.W.3d 504 (Ky.2008), to support his position that the circuit court should have questioned the jury before permitting Officer Maxwell to testify to ensure that none of the jurors knew him, or it should have excluded him as a witness. While not alleging any bad faith on the part of the Commonwealth, Chesher argues that prejudice possibly occurred. We recognize that the decision to permit an unannounced witness to testify is within the discretion of the trial court. *Sanborn,* 892 S.W.2d at 552. We note that both *Sanborn* and *Collins* addressed discovery violations in that either a pretrial order or agreement required the attorneys to advise the other side of any witnesses, which

is not the case here because the discovery order only required the identification of any confidential informants. Likewise, in *Peyton*, the trial court had "requested that both parties identify their witnesses and any potential witnesses that each side intended to call and have testify." *Peyton*, 253 S.W.3d at 512. The trial court based its decision to exclude the witness on potential prejudice to both parties because the jury had not been questioned regarding that witness. The Supreme Court held that the trial court had not abused its discretion by denying defense counsel's request to call the witness in question. *Id.* at 512–13.

Chesher also cites to the unpublished opinion of *Johnson v. Commonwealth*, 2005 WL 2105420 (Ky.App. Sept. 2, 2005), presumably pursuant to CR 76.28(4)(c), to argue that the circuit court should have questioned the jury before permitting the officer to testify. In *Johnson*, the trial court questioned the jury about the surprise alibi witness called by the defense prior to permitting him to testify. There was no issue raised on appeal about whether the witness should have been permitted to testify due to lack of notice; the issue addressed the contents of his testimony. Rather, this Court mentioned that the trial court opted to question the jury prior to letting the witness testify.

██ As the Commonwealth states, and the circuit court ruled below, neither the court nor the Commonwealth was required to *voir dire* the jurors regarding any knowledge they might have about Officer Maxwell. Kentucky Rules of Criminal Procedure (RCr) 9.38 simply provides, in relevant part:

> The court may permit the attorney for the Commonwealth and the defendant or the defendant's attorney to conduct the examination of prospective jurors or may itself conduct the examination. In the latter event the court shall permit the attorney for the Commonwealth and the defendant or the defendant's attorney to supplement the examination by such further inquiry as it deems proper. The court may itself submit to the prospective jurors such additional questions submitted by the parties or their attorneys as it deems proper.

Although it would certainly be a good practice for a trial court to conduct such an examination of the jury prior to permitting a surprise or undisclosed witness to testify, it is certainly not a requirement. Therefore, we find no abuse of discretion in the circuit court's decision to allow the Commonwealth to call Officer Maxwell to testify.

For the foregoing reasons, the judgment of the Metcalfe Circuit Court is affirmed.

ALL CONCUR.