Christopher Shaheid PEYTON,
Appellant

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2006–SC–000343–MR.

Supreme Court of Kentucky.

May 22, 2008.

Shannon Dupree, Assistant Public Advocate, Frankfort, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Frankfort, George G. Seelig, Lebanon, KY, Counsel for Appellee.

Opinion of the Court by Justice SCOTT.

Appellant, Christopher Shaheid Peyton, was convicted by a Hopkins Circuit Court jury of three counts of first-degree trafficking in a controlled substance and of being a persistent felony offender in the first degree. For these crimes, Appellant was sentenced to a total of 34 years in prison. Appellant now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b). For the reasons set forth herein, we affirm Appellant's convictions, but reverse for a new sentencing.

The Hopkins Circuit Court grand jury returned two indictments against Appellant. Both indictments included two counts of first-degree trafficking in a controlled substance. Appellant's charges stemmed from a series of controlled drug buys performed by the Madisonville Police Department, the Hopkins County Sheriff's Department, and the Pennyrile Narcotics Task Force. The first controlled buy was on or about the afternoon of September 27, 2004. The informant used by the Madisonville Police Department to set up and purchase the drugs was Brian Lane. Lane was searched before making the purchase and outfitted with a wire to record any conversations. The police set up video surveillance near where the transaction was to occur. After waiting for a brief period, a van pulled up with an African–American male passenger. The police surveillance could not see the passenger's face, but Lane testified that Appellant was the passenger and that he sold him cocaine. The substance sold to Lane by Appellant tested positive for cocaine.

The second buy occurred on or about the evening of September 27, 2004. Lane was again the informant for the transaction. This time the dealer rode into the area on a bicycle and met with Lane to conduct the transaction. Lane, along with Detective Charles Cobb of the Pennyrile Narcotics Task Force, identified Appellant as the person on the bicycle. Again the substance purchased tested positive for cocaine.

The final transaction occurred on or about May 10, 2005. This time, informant Carl Haley was used for the purchase. Initially, Haley was in contact with an individual named McNarry, but Haley believed that he would ultimately make the drug purchase from a dealer named Mann. However, Detective Cobb testified that before Haley entered the shed where the drug deal was to take place, Mann left. Haley, being from out of town, did not personally know who he would be purchasing drugs from and could only identify the seller by what his contact called him. During the transaction, the seller was identified by the nickname "Black." Haley informed Detective Cobb of the seller's nickname. Detective Cobb asked the assistance of Officer Leslie Gregory of the Madisonville Police Department to see if he knew of any potential drug dealers in town who had the nickname "Black." Officer Gregory identified Appellant as possibly having that nickname.

The next day Detective Cobb asked Haley to join him at the courthouse because he had been told by Officer Gregory that Appellant would be present there on another matter. Haley was not informed of why he was to meet Detective Cobb until he reached the courthouse. Once at the courthouse Detective Cobb asked Haley if "Black" was present. Haley identified Appellant as "Black." Testimony indicated that Haley was not influenced by Detective Cobb in making his identification. Additionally, further testimony presented at trial indicates that twenty-five to thirty people were present at the time the identification was made. However, it is uncertain how many African–Americans were present.

Appellant was ultimately convicted of the three counts of trafficking and of being a persistent felony offender. He was sentenced to a total of thirty-four years in prison.

## I. Although the jury instructions were proper, the trial court's sentencing was in error.

Appellant's first argument, which is unpreserved, is that the trial court's jury instructions improperly gave the jury the capacity to choose whether the sentences for Appellant's convictions would run concurrently or consecutively, since the court ultimately concluded that concurrent sentencing was not an option. As requested, we will review for palpable error. RCr 10.26.

Here, Appellant was convicted of three counts of trafficking in a controlled substance. These crimes were committed while Appellant was on parole.[1] Appellant now argues that the jury was improperly instructed as to sentencing because the trial court ignored the jury's sentence recommendations, and such instructions were erroneous in that they instructed as to an unavailable alternative. Specifically, Appellant claims that the trial court erred in instructing the jury that they could choose to run his terms consecutively *or* concurrently, as the court ultimately concluded otherwise. Moreover, Appellant alleges that had the jury known that their sentencing recommendations would not be followed there is a great likelihood they would have recommended a reduced sentence.

During sentencing, the jury was instructed, in sentencing instruction 11, "You, the jury, have convicted the Defendant of multiple felonies. You shall also

---

1. At the time of the drug deals, Appellant was on parole for convictions of possession of cocaine and second-degree escape.

decide whether the felony sentences shall be run concurrently (at the same time) or consecutively (one after the other)." Thereupon, the jury recommended sentences of seven, eight, and nine years for the three counts. The sentences were then doubled due to the persistent felony offender conviction. This enhanced the jury's recommendations to fourteen, sixteen, and eighteen years, respectively. The jury elected, as per their right, to run these sentences concurrently so that Appellant would serve a total of eighteen years. KRS 532.055(2); *see Foley v. Commonwealth,* 942 S.W.2d 876, 886 (Ky.1996).

At sentencing, however, the trial judge determined she could not sentence Appellant to concurrent terms. The judge concluded the sentences for the two counts in the first indictment should run concurrently, but the sentence for the count in the second indictment should run consecutively to the first indictment. This gave Appellant a thirty-four year sentence.

Accordingly, the crux of the present issue becomes whether the trial court properly applied KRS 533.060(2) in its treatment of Appellant's sentence. To answer, we must determine, then, whether *Devore v. Commonwealth,* 662 S.W.2d 829, 831 (Ky.1984) still presents good law.

KRS 533.060(2) mandates:

*When a person has been convicted of a felony and is* committed to a correctional detention facility and *released on parole* or has been released by the court on probation, shock probation, or conditional discharge, *and is convicted* or enters a plea of guilty *to a felony committed while on parole,* probation, shock probation, or conditional discharge, the person shall not be eligible for probation, shock probation, or conditional discharge and *the period of confinement for that felony shall not run concurrently with any other sentence.*

KRS 533.060(2) (emphasis added). This Court initially addressed KRS 533.060(2)'s impact on sentencing in *Devore,* where Chief Justice Stephens, writing for the majority, articulated that the General Assembly, through its enactment of KRS 533.060(2), sought to elicit certain consequences for felons who commit subsequent felonies while on probation or parole. *Devore,* 662 S.W.2d at 831. Consequently, in such instances, these ramifications are twofold:

> (1) The defendant shall not (for the subsequent felony) be eligible for probation, shock probation or conditional discharge, and (2) The length of the person[']s sentence (again, for the subsequent felony conviction) shall not run concurrently with any other sentence. By obvious inference, the General Assembly has said that the prison sentence (for the second felony conviction) shall be run consecutively.

*Id.*

The Court went on to further explain that in enacting the statute, the legislature's intent was to institute stiffer penalties on those who commit subsequent felonies while paroled by "not having their subsequent sentences served concurrently." *Id.* It is undoubtedly true, as *Devore* recognizes, that the legislature's intent was to strengthen the ramifications for repeat offenders and those who have betrayed the position of trust they have been afforded by a grant of parole or probation. However, it is our belief here today that *Devore* sought to interpret this legislative intent with a much heavier hand than the statute, the legislature or the jails and prisons of this Commonwealth could have ever envisioned.

*Devore* posits that subsequent multiple-count felony convictions committed while on parole must be run consecutively *to one*

*another.* And, indeed, this has been the courts' treatment of KRS 533.060(2) in many instances since *Devore.* However, the proper application of the statute under *Devore's* interpretation has been a source of conflict and confusion within the Commonwealth's courts for nearly twenty-four years now, stemming partly from the incongruous and excessive sentencing results which it may, in some instances, yield. Thus, under *Devore,* the trial courts' treatment of felony offenses committed while on parole has been anything but uniform.

Further adding to the confusion in applying KRS 533.060(2) under *Devore* is its seeming incompatibility with KRS 532.055(2), which states:

> Upon return of a verdict of guilty or guilty but mentally ill against a defendant, the court shall conduct a sentencing hearing before the jury, if such case was tried before a jury. In the hearing the jury will determine the punishment to be imposed within the range provided elsewhere by law. The jury shall recommend whether the sentences shall be served concurrently or consecutively.

*Id.* Clearly, the language of KRS 532.055(2) vests the jury with the mandate of sentence recommendation. As we have previously recognized, while this recommendation is by no means binding upon the court, the directive of the statute granting this ability is. *See Nichols v. Commonwealth,* 839 S.W.2d 263, 265 (Ky. 1992). Moreover, a jury's recommendation as to punishment in a jury trial is an integral aspect of the trial landscape.

> In all felony cases the jury in its initial verdict makes a determination of guilt or innocence. Then the jury makes a recommendation to the trial judge who imposes the final sentence. In making the initial determination, it is clear that this action is subject to the final imposition of sentence by the trial judge.

> These distinct activities have significance, meaning and importance. They are not automatic or pro forma. Each entity in the sentencing system as established by the legislature has a specific statutory role. KRS 532.055(2) provides in part that the jury will determine punishment. Such determination relates to the initial establishment of a sentence and not to how or in what manner the sentence is to be served. The same section also states that the jury will only recommend whether the sentences shall be served concurrently or consecutively.

*Dotson v. Commonwealth,* 740 S.W.2d 930, 931 (Ky.1987) (emphasis added).

While *Devore's* logic is workable in circumstances wherein a paroled or probated individual commits a singular subsequent felony, it becomes unreasonable when dealing with multiple count subsequent felonies. *See Riley v. Parke,* 740 S.W.2d 934, 935 (Ky.1987) (the Court stated that pursuant to KRS 533.060(2), conviction for a singular subsequent felony offense should be run consecutive *to* the reinstated offense for which the offender was on parole); *see also Brewer v. Commonwealth,* 922 S.W.2d 380, 381 (Ky.1996) (holding that KRS 533.060(2) unambiguously required that appellant's second sentence could not run concurrently with the reinstated sentence that he was on parole for). For example, in the present instance, had the trial court properly applied *Devore's* interpretation of the statute, Appellant would have received a forty-eight year sentence in addition to the reinstated sentence for which he was on parole. While we refrain from passing judgment as to whether this sentence is fitting, it is clearly not the eighteen-year sentence which the jury intended to assign.

■ Therefore, we are of the opinion the majority's position in *Devore* leads to

an unworkable interpretation of KRS 533.060(2). Rather, we now hold that the logic espoused by Justice Leibson in his dissent provides an inherently more practical understanding of the statute. "A reasonable interpretation of the phrase 'with any other sentence,' (KRS 533.060(2)) is that 'any other sentence' means only the unserved portion of the sentence for the felony for which probation or parole should be revoked." *Devore,* 662 S.W.2d at 831 (Leibson, J., dissenting). This viewpoint interprets the language, "shall not run concurrently with any other sentence," in KRS 533.060(2) as meaning any other sentence *previously imposed.*

Thus, it becomes quite clear in the context of KRS 533.060(2), that the language, "the period of confinement for that felony shall not run concurrently with any other sentence," should be construed as meaning that subsequent felony offense(s) committed while on probation or parole may not be run concurrently with the sentence for which the individual is on probation or parole. In the instance of multiple-count subsequent felony offenses committed while on probation or parole, however, these subsequent offenses may be run either consecutively or concurrently, at the court's discretion. This connotation is the only rational and practical manner in which the statute can be reasonably applied.

What is at stake here is judicial transparency. The judiciary is duty-bound to maintain credibility with the jurors of this Commonwealth. As a matter of policy, the Commonwealth's courts should not instruct a jury that they have options in relegating a sentence for a criminal defendant, and then take these options away. It is incumbent upon this Court to ensure that the People have confidence in their judiciary. Therefore, if we instruct the jury that they have the power to recommend a sentence with one hand, and then take that decision away from them with the other, we have failed in our task to uphold the mandates and ideals of our Constitution.

Accordingly, we hold that to the extent *Devore* requires all subsequent sentences for crimes committed while on probation or parole to be run consecutively to *each other,* it is overruled.

Thus, we now turn to the merits of Appellant's argument. In instances such as the one at present, when an individual on parole is facing multiple and contemporaneous felony convictions for subsequent crimes (committed while on parole), the jury may still recommend whether to run these subsequent convictions consecutively or concurrently with each other. In these circumstances, the discretion remains with the jury to recommend consecutive or concurrent treatment, as per their statutory right. KRS 532.055(2).

It must be reiterated, however, that the court may not run these subsequent convictions concurrent with the paroled offense. KRS 533.060(2).

Here, the trial court incorrectly determined that the jury's recommendation was not an option. Instead, the court concluded that it must run the eighteen year sentence (from the second indictment) consecutively with the concurrent treatment (sixteen years) of the first two counts (from the first indictment). This imposed a total sentence of thirty-four years. In this manner, the judge ran the sentences for the two counts in the first indictment concurrently but ran the sentence for the count in the second indictment consecutively to the first indictment.

The trial judge erroneously applied KRS 533.060(2) by reading it as applicable to subsequent indictments, rather than to the original paroled or probated offense(s).

Therefore, while there was no error in the trial court's jury instructions, the court did err, however, to Appellant's substantial prejudice in its determination of sentencing. The court was not required under KRS 533.060(2) to run the sentences of the subsequent separate indictments consecutively.

While Appellant, here, failed to contemporaneously object to the improper sentence, we nevertheless find that the erroneous sentence was injurious to Appellant's substantial rights. *Morman v. Commonwealth*, No.2005–SC–000957–MR, 2007 WL 541925, at *4 (Ky.2007) (finding palpable error when trial court imparted a sentence beyond the maximum allowed under KRS 532.110(1)(c) despite a failure to raise the issue at trial); *Lawson v. Commonwealth*, 85 S.W.3d 571, 581 (Ky. 2002) ("Although we recognize that trial courts have the authority to make a final decision whether a defendant's sentences are to run concurrently or consecutively, and that juries' determinations as to that issue are merely recommendations, we decline the Commonwealth's invitation to find that the error in this case is harmless."). "[W]e believe due process entitles Appellant to a jury recommendation as to whether the sentences for his convictions run concurrently or consecutively, and we also know that the jury's recommendation will be considered by the trial court before it makes a final decision." *Lawson*, 85 S.W.3d at 582. Accordingly, we vacate the sentence of the trial court and remand for resentencing by the court, not the jury. *Id.; Boone v. Commonwealth*, 821 S.W.2d 813, 814 (Ky. 1992).

## II. The trial court did not abuse its discretion in denying Appellant the opportunity to present witnesses.

■ During voir dire the trial court requested that both parties identify their witnesses and any potential witnesses that each side intended to call and have testify. Appellant's counsel informed the court that it had no witnesses to call, but that Appellant may decide to testify on his own behalf. After the jury was impaneled, but prior to opening statements, Appellant's counsel informed the trial court that Appellant had thought of a witness he would like to have testify. Appellant stated that he had tried to alert his attorney to this fact during voir dire, but could not get his attention. The trial judge countered that voir dire lasted for over two hours and Appellant could have slipped his attorney a note informing him of the new witness. The trial judge ruled against letting the witness testify because the jury was not questioned whether they had a bias for or against that witness and the trial judge feared that this might lead to prejudice against both parties. Further, the trial judge believed that allowing the witness to testify at this point may delay the trial and would lead to parties coming up with an infinite number of witnesses for the purpose of delaying trial.

■ It is undisputed that the determination of whether a surprise or unannounced witness may testify is within the sound discretion of the trial judge. *Sanborn v. Commonwealth*, 892 S.W.2d 542, 552 (Ky.1994); *Collins v. Galbraith*, 494 S.W.2d 527, 530 (Ky.1973). In making this determination we have previously held that a trial judge should determine whether the witness was undisclosed because that party was operating in bad faith, and if allowing that witness to testify will prejudice the other party. *Collins*, 494 S.W.2d at 530; *see also Williams v. Indiana*, 714 N.E.2d 644, 651 (Ind.1999) (holding that "trial courts have the discretion to exclude a belatedly disclosed witness when there is evidence of bad faith on the part of a party

or a showing of substantial prejudice to the state").

In this matter, the trial judge properly exercised her discretion in denying Appellant the opportunity to present his witness. While we do not take lightly the denial of a defendant's right to call a witness, there is no indication here that the trial judge acted arbitrarily. It is clear from her ruling that the trial judge believed allowing the witness would potentially prejudice both parties and implied that Appellant was trying to delay his trial in bad faith by not informing his counsel about this witness earlier. Additionally, Appellant offers no argument that this witness would have presented any exculpatory evidence that would have altered the jury verdict. The trial judge properly exercised her discretion and there is no error here.

### III. The trial court did not abuse its discretion in consolidating two separate indictments for trial.

Appellant's next argument is that the trial court improperly consolidated his two indictments for purposes of trial. Appellant's first indictment contained two counts of first-degree trafficking in a controlled substance. Those particular charges stemmed from drug buys on September 27, 2004, and October 5, 2004. The agencies involved in this indictment were the Madisonville Police Department and the Hopkins County Sheriff's Department. Appellant's second indictment contained two other counts of first-degree trafficking in a controlled substance. This indictment included drug buys from September 27, 2004, as well as May 10, 2005. The agencies involved in this indictment were the Madisonville Police Department and the Pennyrile Narcotics Task Force. Two different confidential informants were used in the drug buys.

Prior to trial the Commonwealth moved to consolidate the two indictments. The Commonwealth argued that all of the controlled buys involved cocaine and that two of the controlled buys occurred on the same day. Additionally, the Commonwealth believed that the majority of the drug buys occurred close enough to each other to make consolidation logical. The Commonwealth also argued that consolidating the two indictments would lead to judicial economy.

Appellant's counsel countered that since several different law enforcement agencies were involved in the drug buys with two different confidential informants, the trials should remain separate. Appellant feared that the length in time between the drug buys and number of people involved would cause confusion for the jury and prejudice the jury against him. Further, Appellant feared that the number of charges in a consolidated trial may cause the jury to conclude that Appellant must be guilty.

The trial court granted the Commonwealth's motion for consolidation. The trial court reasoned that Appellant's counsel could question each juror's ability to differentiate between the facts and the dates and that the court could, upon request, admonish the jury to avoid commingling the facts of the two indictments.

A trial judge has broad discretion in deciding whether to allow joinder of offenses. *Brown v. Commonwealth,* 458 S.W.2d 444, 447 (Ky.1970). We thus review the trial court's determination under an abuse of discretion standard. *Violett v. Commonwealth,* 907 S.W.2d 773, 775 (Ky. 1995). RCr 9.12 states that "[t]he court may order two (2) or more indictments ... to be tried together if the offenses ... could have been joined in a single indictment." RCr 6.18 states that two or more charges may be joined in an indictment "if the offenses are of the same or similar

character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan."

In this matter, the trial judge did not abuse her discretion in consolidating the indictments for trial. All of the charges made against Appellant are similar—he is accused in each of selling cocaine. While the confidential informant or the witnesses may be different for several of the charges, the facts are distinct enough to prevent jury confusion. Appellant was even able to question each juror on his ability to differentiate between the facts of each charge. This questioning apparently worked because the jury actually acquitted Appellant of one of the charges. Further, there is no evidence that Appellant was unable to provide a proper defense for himself. *See Brown,* 458 S.W.2d at 447 (holding that since defendant was not "embarrassed or confounded" in making his defense the joinder of offenses was not improper). Despite the fact that the acts leading to the charges occurred over several months, they were not too remote from each other to prevent joinder. *See Violett,* 907 S.W.2d at 775–776 (holding that offenses occurring approximately four years apart were not too remote in time to be joined for purposes of trial). "[E]fficiency in judicial administration by the avoidance of needless multiplicity of trials was not outweighed by any demonstrably unreasonable prejudice to the [Appellant] as a result of the consolidations." *Brown,* 458 S.W.2d at 447. There is no error here.

## IV. The identification procedure used by the Commonwealth to identify Appellant was appropriate.

Prior to trial, Appellant moved the trial court to suppress the identification of Appellant made by confidential informant Haley and any of the fruits of that identifica-

tion. The identification in question is where Haley identified Appellant at the county courthouse as the man who sold him drugs on May 10, 2005. Haley initially knew the person who sold him drugs only by the nickname "Black" and thought the dealer's name was Michael Mann. At the courthouse Haley identified Appellant as "Black." Evidence introduced indicated that at the time the identification was made about 25 to 30 people were present in the courtroom.

Appellant moved to exclude the identification on the grounds that the identification was an improper "show-up" identification. Appellant argued that there was no exigent circumstance warranting the police to have Haley pick Appellant out at the courthouse. Further, Appellant argued that a proper photo lineup could have been easily performed and would be more reliable. Appellant also argued that since there is no evidence of how many African–Americans were present in the courtroom Haley's identification may not be reliable.

The trial judge ruled that Haley's identification was not a "show-up" procedure. The trial judge believed that a show-up procedure is where an officer presents a suspect to a victim one-on-one soon after a crime occurs. In this situation, Haley was not specifically introduced to Appellant. Further, the trial judge believed that even if Haley's identification constituted a show-up procedure, it was reliable according to the guidelines set out in *Merriweather v. Commonwealth,* 99 S.W.3d 448, 451 (Ky. 2003). The trial judge therefore denied Appellant's motion to suppress.

When reviewing the trial court's findings of fact after a suppression hearing, the conclusion shall be conclusive if "supported by substantial evidence." RCr 9.78; *Adcock v. Commonwealth,* 967 S.W.2d 6, 8 (Ky.1998). If the findings are supported by substantial evidence, then

the trial judge's application of the applicable law to the facts is reviewed *de novo. Id.; see Commonwealth v. Neal,* 84 S.W.3d 920, 923 (Ky.App.2002).

In this matter, the trial judge's factual findings are supported by adequate evidence. The procedure used to identify Appellant was not a single suspect show-up as alleged because Haley was shown at least twenty-five people and asked to choose one. Further, while Haley may have been initially mistaken as to the actual name of the dealer, he confidently picked out Appellant from a room of nearly thirty people.

 Even if the method used to identify Appellant was a show-up, it was reliable under the standard articulated in *Merriweather. Merriweather* requires the trial court to:

assess the probability that the witness would make an irreparable misidentification based upon the totality of the circumstances and in light of the five factors enumerated in *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401. 382, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), which include (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the identification.

*Merriweather,* 99 S.W.3d at 451. In the present matter, there is no evidence that these five factors were not met. While Haley was inevitably under stress while completing the drug deal, this alone does not lead to a conclusion that he was unable to properly identify who dealt him the cocaine. Moreover, the short period of time between the purchase of the drugs and the identification leads to a conclusion

that the identification procedure was reliable. Thus, there is no error.

## V. The Commonwealth's introduction of Appellant's prior bad acts did not rise to the level of palpable error.

Appellant next argues that the Commonwealth introduced improper prior bad acts evidence at trial. During trial, Deputy Shawn Bean of the Hopkins County Sheriff's Department testified regarding the circumstances surrounding the controlled buys involving Appellant. During this examination the following conversation occurred:

Deputy Bean: We had several targets, [Appellant] being one of them.

Commonwealth: Was he randomly selected?

Deputy Bean: No, sir, we had a meeting in your office. We shared information and picked out several large dealers and targeted them out for cases.

Commonwealth: And he [Appellant] was one of them?

Deputy Bean: Yes, sir.

Deputy Bean later testified that he had dealt with Appellant on "many occasions." Also Appellant complains that later in the trial, the police were able to testify that Appellant was in court on another charge when he was identified by Haley as the man who sold him drugs. Appellant further argues that the Commonwealth provided no KRE 404(c) notice of their intent to admit this evidence. Appellant did not object at the time to this testimony, but now argues that it consisted of impermissible evidence of his prior bad acts under KRE 404(b). We therefore review this allegation for palpable error. RCr 10.26.

 KRE 404(b) states "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in

order to show action in conformity therewith." However, such evidence may be admissible: "1) [i]f offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or 2)[i]f so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party." *Id.* In determining the admissibility of other crimes evidence, it is useful to analyze the evidence using a three-tier inquiry involving its: (1) relevance, (2) probativeness, and (3) prejudice. *Matthews v. Commonwealth,* 163 S.W.3d 11, 19 (Ky.2005).

 This Court has previously held that testimony explaining why a defendant had become a suspect in a drug investigation is relevant. *Gordon v. Commonwealth,* 916 S.W.2d 176, 179 (Ky.1995). The testimony is relevant to avoid any implication that the defendant was unfairly singled out in the drug sting operation and to explain why the defendant was targeted. *Id.* However, *Gordon* further stated that "there was no legitimate need to say or to imply that appellant was a drug dealer or that he was suspected by the police department of selling drugs in a particular vicinity." *Id.* Importantly, however, the error in *Gordon* was preserved. *Id.* at 178.

In *Commonwealth v. Mitchell,* 165 S.W.3d 129, 134 (Ky.2005), similar testimony to that given in this matter was found not to be palpable error. The testimony in *Mitchell* was as follows:

> Commonwealth: And how did the Defendant become the subject of this investigation?

Detective Hunter: Upon the initial interview of the informant, he identified several targets that he had conducted transactions with that he had purchased narcotics from. Generally, what I would do is I make a list somewhere in some personal notes and we'll—I'll verify some of the information that he's told me, and then we'll start working from that. Ms. Mitchell over there was identified by the informant. I had received some other complaints .... [after an overruled objection from the defense counsel][2] .... I had received some other complaints, thus verifying the informant's information that he told me, and then we decided to set up a transaction with Ms. Mitchell.

*Id.* at 133–134. Since Detective Hunter never gave any explanation of what the "complaints" received against Ms. Mitchell were, and since his reference to the informant having identified Mitchell as one he had conducted drug transactions with before was vague, the testimony did not constitute a prior bad act under KRE 404(b). *Id.* at 134. Further, there was nothing in the testimony that rose to the level of manifest injustice against Mitchell. *Id.*

 In this matter, the testimony of Deputy Bean does not rise to the level of palpable error. Deputy Bean's testimony is generally admissible under KRE 404(b)(2) because it would be difficult to explain why Appellant was being targeted for a drug sting operation without providing some background information. *See generally Gordon,* 916 S.W.2d at 179 (holding that evidence showing why a drug sting operation was being performed is relevant). While Deputy Bean should not have stated that he believed Appellant was a drug dealer, that statement alone does

---

**2.** Despite the objection after the testimony, this Court treated the error as unpreserved because the objection was ambiguous.

not rise to the level of manifest injustice and did not single-handedly lead to Appellant's conviction. In fact, there was plenty of evidence presented at trial to support his conviction. Further, the jury could not have been prejudiced by Deputy Bean's statement because they acquitted Appellant of one of the charges against him. Deputy Bean's statements only laid a foundation for why the different police agencies targeted Appellant for their drug operation. While Deputy Bean's statement constituted error, it does not rise to the standard of palpable error.

■■■■■ Deputy Bean's statement that he had dealt with Appellant on many different occasions does not fall under KRE 404(b). His statement was vague and did not allude to any particular bad act Appellant committed. *See Mitchell,* 165 S.W.3d at 134 (holding that since testimony regarding defendant's prior run in with informants was vague and did not address any particular bad act, such statements did not fall under KRE 404(b)). Further, any statement regarding Appellant's presence at the county courthouse when he was identified by Haley does not fall under KRE 404(b). There is nothing in the record which indicated that Appellant was at the courthouse for a criminal matter. A person's mere presence at a courthouse does not indicate that he has committed a bad act.

It does appear from the record that the Commonwealth did not provide 404(c) notice regarding the introduction of the bad acts evidence implying that Appellant was a drug dealer. However, since no objection was made regarding the lack of notice, this must be reviewed under our palpable error standard. RCr 10.26. Here, the lack of notice does not rise to the level of manifest injustice because the brief mention of Appellant's potential prior bad acts did not prejudice his ability to have a fair trial. Hence, the failure to receive notice on the Commonwealth's intention to use the bad acts evidence did not harm Appellant.

## VI. The Prosecutor did not engage in prosecutorial misconduct in her penalty phase closing argument.

Appellant next argues that the prosecutor made improper statements, constituting prosecutorial misconduct, during the penalty phase closing argument. Appellant failed to preserve this argument at the trial court, so we will again review only for palpable error. RCr 10.26.

■■■■■ The prosecutor's statements included the following comments:

But there are consequences when we choose to break the law. Or the law has no validity. If juries can say 'yeah he broke the law but it was only a tenth of a gram,' or if it was only this, or it was only that, *the message that gets sent is you can get away with it, it is not that big of a deal.* But one of the reasons we in Kentucky let the people do it, is you get to decide whether it is a deal or not. You get to decide, is this a problem? *Having people selling drugs on our street corner; is that a problem we are concerned with? And when people break the law, when they intentionally, knowingly, persistently break the law, do we ignore it?*

... it sets a pattern the law doesn't apply to them and that sometimes they have to learn, you can't do that, there is a reason for it and I have told you don't do it. *Now you have it three times and its fortunate in Kentucky that we don't do like California and some states; honestly [Appellant] would be in prison forever, he would never walk out of prison simply because he had two prior convictions. We don't do that here, we don't have a three strikes and you are*

*out. But we do recognize that people who break the law repeatedly, persistently, can not be given courtesy and easy treatment . . .*

*. . .* it is your decision and that's a lot to put on your shoulders and I am sorry. That is why I don't like this particular system, 12 honest citizens trying to do a good job and they don't know how to compare this to other cases. *We are not allowed to tell you to send a message to drug dealers in the community. We are not allowed. We don't do that. But I will tell you don't tread lightly on three offenses, PFO 1 and give him the minimum, because the net effect is when you speak, you are speaking as our community.* And you say 10 years for three trafficking counts, is what we think this crime is worth. This is a substantial problem if the man is a substantial [inaudible] and you didn't cause this, am I going to tell you to give him, I am not going to try to put my judgment on, that is not my authority, I am here to explain the law to you. But I am telling you, 10 years concurrent is not adequate, for a PFO 1, 3 counts, it needs to be more than that.

(emphasis added). Appellant argues that the above emphasized statements were improper because they asked the jury to "send a message" through their sentencing. Improper they may have been, but within the context in which they appeared, they did not constitute palpable error.

▆▆▆ Kentucky analogizes such statements to arguments which "tend to cajole or coerce a jury to reach a verdict that would meet the public favor" or suggests "that a jury convict on grounds not reasonably inferred from the evidence." *Commonwealth v. Mitchell,* 165 S.W.3d 129, 132 (Ky.2005). On the other hand, prosecutors have wide latitude in their closing arguments and may attempt to convince

jurors that the matter before them should not be dealt with lightly. *Brewer v. Commonwealth,* 206 S.W.3d 343, 350 (Ky.2006).

While the jury did recommend a strong sentence for Appellant, it did not recommend the maximum sentence and Appellant was sentenced within the allowable parameters of the law. Notably, the prosecutor's statements in this matter were far less harmful than statements held in other cases not to be palpable error. *See Mitchell,* 165 S.W.3d at 131–133 (holding that urging the jury to make an example out of defendant to help fight the spread of Oxycontin related crimes was not palpable error), *Brewer,* 206 S.W.3d 343, 349–350 (holding that closing statement urging the jury to show that Owen County has the "backbone" to stand up to crime and to increase the sentence so that the community can keep "a hammer" over the heads of defendants does not constitute palpable error). Thus, we find no palpable error.

## VII. The trial court properly denied a directed verdict in favor of Appellant because there was sufficient evidence to support the May 10th trafficking conviction.

Appellant next argues that he should have received a directed verdict of acquittal on the trafficking conviction relating to the May 10, 2005 drug purchase. Appellant argues that there was inadequate evidence to support the conviction because the drug informant, Haley, who purchased the drugs initially believed he purchased the drugs from Mann. Despite Haley's confusion as to what the actual name of the drug dealer was, he was certain that his nickname was "Black." Later, Haley identified Appellant as the drug dealer. Due to the confusion regarding who the drug dealer was, Appellant now argues that the Commonwealth did not prove every element of the crime of first-degree

trafficking and hence a jury could not have convicted him beyond a reasonable doubt. *See Commonwealth v. Gentry*, 261 Ky. 564, 88 S.W.2d 273 (1935) (holding that when a defendant enters a not guilty plea "that plea puts in issue every fact necessary to a conviction, and the burden of establishing those facts beyond a reasonable doubt remains with the Commonwealth throughout the trial and never shifts to the accused.") Further, Appellant argues that since Haley was confused about the drug dealer's real name, his testimony lacks the "atmosphere of verisimilitude" to support a conviction. *See Kentucky Power Co. v. Dillon*, 345 S.W.2d 486, 489 (Ky.1961).

 A trial court's decision regarding a directed verdict motion is reviewed under the standard articulated in *Commonwealth v. Benham*, 816 S.W.2d 186 (Ky.1991):

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on the motion, the trial court must assume that the evidence for the Commonwealth is true, but reserving to the jury questions as to the credibility and weight to be given to such testimony. On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

*Id.* at 187. KRS 218A.1412 states that a person is guilty of first-degree trafficking if he:

> knowingly and unlawfully traffics in: a controlled substance, that is classified in Schedules I or II which is a narcotic drug; a controlled substance analogue; lysergic acid diethylamide; phencyclidine; a controlled substance that contains any quantity of methamphetamine, including its salts, isomers, and salts of isomers; gamma hydroxybutyric acid (GHB), including its salts, isomers, salts of isomers, and analogues; or flunitrazepam, including its salts, isomers, and salts of isomers.

In this matter, there is more than adequate evidence for a jury to convict Appellant of first-degree trafficking.

 While it is true that Haley was initially confused about the name of the person he purchased the cocaine from, he was certain that his nickname was "Black." When asked to pick out the person named "Black" from a crowd of people at the courthouse, he chose Appellant. There is no evidence that Haley could not remember the physical description of the person he purchased drugs from other than an allegation from Appellant that Haley could not remember because he was nervous. A jury could reasonably rely on Haley's testimony and find Appellant guilty beyond a reasonable doubt of first-degree trafficking. *See Estep v. Commonwealth*, 957 S.W.2d 191, 193 (Ky.1997) (stating that a jury makes all determinations regarding the credibility and weight of a witness's testimony). The trial judge properly denied Appellant's directed verdict motion.

**VIII. Statements made at trial indicating Appellant answered to his own nickname did not violate Appellant's due process.**

Appellant's final allegation of error is that the Commonwealth improperly introduced evidence that was not turned over to him in discovery. In particular, Appellant objects to the testimony of Officer Gregory stating that the day before trial Appellant answered to the nickname "Black" in his

presence. Since this statement constituted an oral statement made by the Appellant to a witness, Appellant now argues that this should have been disclosed to his counsel pursuant to RCr 7.24(1). Appellant believes that if Officer Gregory had not made this statement, the jury would not have convicted him of first-degree trafficking on the May 10, 2005 drug purchase. At trial Appellant's counsel failed to object to Officer Gregory's testimony, so any error will be reviewed under our palpable error standard. RCr 10.26.

 It is obvious from reviewing the record that there was "no manifest injustice" caused by Officer Gregory's statements. There was testimony from several witnesses that Appellant was referred to as "Black" in the community. Further, Haley testified that the person who sold him drugs was named "Black," and then picked Appellant out as "Black." Additionally, since Appellant certainly knew from previous discovery that the determination of his nickname being "Black" would be crucial to the Commonwealth's case, he is hard pressed to claim surprise when evidence regarding his nickname comes into court. Since the event here in question happened one day before trial, Appellant had to be aware of his acknowledgement of his nickname in front of Officer Gregory. There is no palpable error here.

## IX. CONCLUSION

For the reasons set forth herein, we hereby remand this matter back to the Hopkins Circuit Court for resentencing.

All sitting. All concur.