RENDERED: JUNE 15, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0503-MR

TRAY C. SPALDING                                             APPELLANT

ON APPEAL FROM MARION CIRCUIT COURT
V.              HONORABLE SAMUEL T. SPALDING, JUDGE
NOS. 19-CR-223 & 19-CR-225

COMMONWEALTH OF KENTUCKY                      APPELLEE

**OPINION OF THE COURT BY JUSTICE CONLEY**

**<u>AFFIRMING</u>**

A Marion Circuit Court jury found Tray Spalding guilty of two counts of trafficking in a controlled substance in the first degree, second or greater offense. The jury recommended a sentence of twenty-seven years in prison, but the trial court imposed a sentence of twenty years pursuant to KRS[1] 532.070. Spalding now appeals as a matter of right.[2] He alleges the trial court violated his right to confront the witnesses against him when it permitted three witnesses to testify via Zoom. Additionally, Spalding claims the trial court erred when it permitted the Commonwealth to join three indictments for trial. We hold the trial court did not err when it joined the three indictments for trial. While we find the trial court erred when it permitted three witnesses to testify

---

[1] Kentucky Revised Statues.
[2] Ky. Const. § 110(2)(b).

remotely yet find that error harmless beyond a reasonable doubt. We affirm the judgement of the Marion Circuit Court.

## I. FACTS AND PROCEDURAL HISTORY

On December 19, 2018, Joshua O'Bryan was working as a confidential informant for Detective Brad Scholl, when he met with Spalding to purchase illegal drugs from him. O'Bryan subsequently completed two more transactions working under Detective Scholl on January 2nd and the 9th of 2019. Spalding was charged in three separate indictments by a Marion County grand jury for three counts of trafficking in a controlled substance in the first degree, second or greater offense.[3]

On August 27, 2020, the Commonwealth moved the trial court to join these separate indictments pursuant to RCr[4] 9.12. A hearing was held on the issue, but the trial court declined to consolidate at that point because it decided it did not have enough available information. The Commonwealth bided its time and again moved the trial court to consolidate the cases for trial on January 19, 2021. Both parties submitted memorandum in support of their position and the trial court conducted a hearing on the matter on January 27, 2021. In a four page order the trial court agreed with the Commonwealth and consolidated the three cases for the purposes of trial.

On July 23, 2021, three days before the start of the jury trial scheduled for the 26th, the trial court ruled, over defendant's objection, that it would

---

[3] Spalding was acquitted at trial on case number 19-CR-00224.
[4] Kentucky Rules of Criminal Procedure.

allow some of the Commonwealth's witnesses to testify remotely. These witnesses were to testify regarding the chain of custody of the purported narcotics. Spalding's objection was that doing so violated his right of confrontation under the Sixth Amendment of the United States Constitution and Section 11 of the Kentucky Constitution. At that time, the trial court did not state a reason other than their testimony was limited to the chain of custody.

On the morning of trial, the Commonwealth again requested two witnesses to testify remotely, though ultimately, the Commonwealth would call three witnesses to testify as to chain of custody remotely. During this discussion, the Commonwealth stated it would prefer these witnesses to testify remotely but "she could do it either way." Again, Spalding objected and correctly cited the requirement of a compelling need under *Maryland v. Craig.* 497 U.S. 836, 840 (1990). The trial court ruled that there was a compelling need as the witnesses had relocated and cited the limited scope of their testimony as to the chain of custody.

Several witnesses testified in person as to the handling and testing of the narcotics. Det. Scholl testified that after each controlled buy he placed the original container of narcotics in a zip lock bag, sealed it with evidence tape and his initials. Then he wrote the case information on the bag, including case number, date, suspect and a brief description of the narcotics. Then he placed this in a manilla envelope, sealed it with brown postal tape then put evidence tape on it along with his initials. Det. Scholl placed the registered mail sticker

on the envelope and delivered it to the post office and mailed it to the Kentucky State Police (KSP) Central Laboratory in Frankfort.

James Williams also testified in person. He was a laboratory scientist in the KSP Central Laboratory. His job was to receive any incoming evidence, open the package, fill out a form, reseal the container and log in the information into the system and label each package with a unique laboratory number[5] and the date it was received. He would then route the package to supervisor who would assign it to an analyst for identification and analysis. Once the analyst was finished, she would place it in the release locker where it would be picked up by the evidence custodian at Drug Enforcement and Special Investigations (DESI) West. Spalding asked no questions of Williams on cross-examination.

Sgt. Robert Chambers was the evidence custodian at DESI West. Sgt. Chambers testified about each package received by the laboratory. He recounted each package was sealed by evidence tape and stored behind a double locked door in the evidence locker which was equipped with an alarm. Sgt. Chambers identified each item by agency case number and described how each item was handled in the laboratory and when it was received from the laboratory. He also testified that Trooper Downs transported the evidence from Agency Case #32-19-0010 back to the laboratory to be tested,[6] and after it was

---

[5] The laboratory would assign a number different from the police agency submitting it. Both numbers are on the final analyst report and labeled as such.

[6] Trooper Downs was one of the witnesses who later testified by Zoom. The import of Trooper Down's testimony is identical to what Sgt. Chambers relates here

tested, Sgt. Chambers retrieved it from the laboratory and returned it to the evidence locker.

Three witnesses testified remotely regarding the chain of custody on the second day of trial. Lieutenant Brad Riley testified that he was, at the time, the Administration Sergeant at DESI West. As part of his responsibilities, he was tasked to log in evidence. Lt. Riley testified he received the evidence back on three different cases[7] from the Central Lab from Unit TF 27 in February of 2019. Lt. Riley stated that he was currently assigned to KSP Post 4 and assisted operations at the Kentucky State Fair. Spalding did not ask any questions on cross-examination.

Trooper Downs also testified via Zoom, but no explanation was given for his excusal from testifying in person. He told the jury that he transported the evidence for Agency case #32-19-0010 from the evidence locker back to the KSP Central Laboratory for testing. Spalding did not ask any questions on cross-examination.

Lt. Mark Watkins also testified remotely. The Commonwealth, during opening statements, told the jury that Lt. Watkins was ill with Covid.[8] He was assigned as a Task Force officer to DESI West. He testified that he retrieved the

---

without objection from Spalding: That he transported this item from the evidence storage unit at DESI West to the KSP Central Laboratory. It is not clear why this item was not tested by the laboratory initially.

[7] Agency case nos. 32-18-0573, 32-19-0001, and 32-19-0010, respectively.

[8] The Commonwealth did not mention this when seeking to have this witness to testify remotely when it was discussed three days before trial or on the morning of trial. The trial court did not use this as a justification when it ruled it would allow remote testimony. In its brief the Commonwealth seems to have a adopted a post hoc rationalization.

5

three items from the Central Laboratory in Frankfort and returned them to the storage locker at DESI West. Spalding did not ask any questions of this witness either.

Spalding was convicted on two counts of trafficking in a controlled substance in the first degree, second or greater offense, while he was acquitted on case 19-CR-224.[9] The jury recommended a total sentence of twenty-seven years, but the trial court imposed a sentence of twenty years. We now discuss the merits of the appeal.

## II.    ANALYSIS

Spalding argues the trial court erred by allowing three witnesses to testify remotely, violating his right of confrontation as guaranteed by the Sixth Amendment of the United States Constitution and under Section 11 of the Kentucky Constitution. Spalding also claims the trial court abused its discretion by consolidating these three cases for trial.

**A. The trial court erred when it permitted witnesses to testify remotely, however this error was harmless beyond a reasonable doubt.**

As noted above, the trial court allowed three witnesses to testify remotely over defense objection. The Commonwealth in its brief claims a compelling need for Lt. Brad Riley to testify remotely because of his duties at the state fair, gives no reason at all why Trooper Downs needed to testify remotely, and states that Lt. Mark Watkins was ill with Covid as the reason he testified remotely.

---

[9] Joshua O'Bryan, the confidential informant, had trouble remembering this transaction and Det. Scholl neglected to record the transaction.

6

Evidentiary rulings by the trial court are reviewed for abuse of discretion. *Anderson v. Commonwealth,* 231 S.W.3d 117, 119 (Ky. 2007). The test for abuse of discretion is whether the trial court's ruling was arbitrary, unfair, unreasonable or unsupported by sound legal principles. *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999).

This Court was recently confronted with a similar issue involving the use of remote technology, or Zoom, to allow witnesses to testify remotely. *Campbell v. Commonwealth,* No. 2021-SC-00479, 2023 WL 3113315 (Ky. Apr. 27, 2023). In *Campbell,* we held that the trial court erred by allowing a doctor to testify remotely on the issue of serious physical injury and that error required reversal of the conviction of assault in the first degree. *Id.* This Court was bound by the United States Supreme Court's decision in *Maryland v. Craig,* 497 U.S. 836, 840 (1990). That decision permitted courts to balance the defendant's right of confrontation in order to further an important public policy where there was a finding of necessity on a case-specific basis. In *Campbell,* we held no compelling need existed to justify the trial court's decision to allow the doctor to testify remotely. 2023 WL 3113315 at *6. In *Campbell,* it should be noted, this Court's hands were tied by the United States Supreme Court's refusal to revisit the *Craig* decision in light of the undermining of its rationale after that Court's decision in *Crawford v. Washington,* 541 U.S. 36, 61 (2004).[10]

---

[10] Our opinion in *Campbell v Commonwealth* provides an in-depth analysis of the *Craig- Crawford* conundrum.

Here, we are faced with a nearly identical issue.  Although in this case, Spalding, in addition to arguing his rights were violated under the U.S. Constitution, asserted his rights under the Confrontation Clause under Section 11 of the Kentucky Constitution as well. While this Court has no authority to contravene the U.S. Supreme Court when interpreting the U.S. Constitution, this Court is the final authority on the Kentucky Constitution. This Court has previously held that the protections afforded defendants by the Confrontation Clause of Section 11 and the Sixth Amendment are coextensive. *Commonwealth v. Willis*, 716 S.W.2d 224 (Ky. 1986). And yet the rationale behind *Willis,* like *Craig,* was based on *Ohio v. Roberts,* 448 U.S. 56 (1980). All of these cases were decided many years prior to the U.S. Supreme Court's decision in *Crawford.*  Now, it has been nearly twenty years since *Crawford* has been decided and the rationale supporting the *Willis* and *Craig* decisions have been fatally undermined. And yet it is not necessary, at this point, to uncouple ourselves from *Craig* in order to vindicate Spalding's confrontation rights in this case.  Because even under *Craig,* the trial court erred.

Three days before trial, the Commonwealth, Spalding, and the trial court discussed the upcoming trial. At one point, discussion turned to these witnesses and the trial court suggested to the Commonwealth to have them appear by zoom. The trial court surmised that "if the higher courts allow me to decide where children live, and there's not too much more important than that, by Zoom, then I can't imagine they wouldn't allow at least the chain of custody people to testify at trial by Zoom."  On the docket sheet the trial court wrote

8

that the "Court ruled that chain of custody witnesses can testify by Zoom, over the Defendant's objection." This rationale, however, ignores that while issues concerning the placement and well-being of children are extremely important, they remain civil matters not afforded the right of confrontation under our constitutions.

The morning of trial, Spalding again renewed his objection to any witnesses testifying remotely, whereupon the Commonwealth stated they preferred not to drag them down here but could "do it either way." Nowhere in this discussion is any mention of Covid or the Kentucky State Fair. The trial court stated that these witnesses probably were not needed but ruled there was a compelling need because the witnesses had relocated and then cited the limited scope of their testimony as chain of custody witnesses. On the docket sheet, the trial court wrote, "Court ruled [their] two witnesses could testify by Zoom. Both witnesses are only chain of custody witnesses and the Court concludes there is a compelling need as both have moved."

While a witness sick with Covid could arguably be a compelling need justifying remote testimony under the *Craig* standard, the trial court made no such finding, and this was not mentioned during either discussion of remote testimony. The first time Covid was mentioned was during the Commonwealth's opening argument and the record is not clear whether Spalding had been informed of this before the jury was. Had this been discussed with Spalding prior to the commencement of the trial, the trial court could have advised Spalding whether he wished to continue the trial so the

9

ailing witness could be physically present and thereby waive his right to a speedy trial or carry on with the trial with the witness testifying remotely. As for Lt. Brad Riley, the witness tied up with the Kentucky State Fair, this hardly needs further comment from this Court. As important as the state fair is, it in no way rises to the level of necessity as contemplated by *Craig.* And no rationale has been offered by the Commonwealth for Trooper Downs's absence, either at trial or in its briefs before this Court. The trial court abused its discretion when it allowed these witnesses to testify remotely.

As we have now decided there is a confrontation clause error, we now must determine "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction . . . or put otherwise, that error was harmless beyond a reasonable doubt." *Talbott v. Commonwealth,* 968 S.W.2d 76, 84 (Ky. 1998) (citing *Chapman v. California,* 386 U.S. 18, 23, 24 (1967)). The U.S. Supreme Court has held that:

> An assessment of harmlessness cannot include consideration of whether the witness' testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation; such an inquiry would obviously involve pure speculation, and harmlessness must therefore be determined on the basis of the remaining evidence.

*Coy,* 487 U.S. at 1021–22.

Three witnesses testified remotely as to the chain of custody of the narcotics. Kentucky Rules of Evidence (KRE) 901(a) states that "[t]he requirement of authentication or identification as a condition precedent to

10

admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." This Court has held that:

> Logically, a proper foundation requires the proponent to prove that the proffered evidence was the same evidence actually involved in the event in question and that it remains materially unchanged from the time of the event until its admission. The necessary foundation depends upon the nature of the evidence. Evidence readily identifiable and impervious to change may be admitted solely on testimony that it appears to be the actual object in an unchanged condition. However, the more fungible the evidence, the more significant its condition, or the higher its susceptibility to change, the more elaborate the foundation must be.

*Thomas v. Commonwealth,* 153 S.W.3d 772, 779 (Ky. 2004). However, this Court has never held that proffered evidence requires a perfect chain of custody.

> Even with respect to substances which are not clearly identifiable or distinguishable, it is unnecessary to establish a perfect chain of custody or eliminate all possibility of tampering or misidentification, so long as there is persuasive evidence that the reasonable probability is that the evidence has not been altered in any material respect. Gaps in the chain normally go to the weight of the evidence rather than to its admissibility.

*Rabovsky v. Commonwealth,* 973 S.W.2d 6, 8 (Ky. 1998) (internal citations and quotations omitted). "All possibility of tampering does not have to be negated. It is sufficient in these cases that the actions taken to preserve the integrity of the evidence are reasonable under the circumstances." *Penland v. Commonwealth,* 463 S.W.2d 130, 133 (Ky. 1971) (citing *Brown v. Commonwealth,* 449 S.W.2d 738 (Ky. 1969)).

Three witnesses testified remotely regarding chain of custody, but the Commonwealth also had several witnesses physically present to testify as to the chain of custody regarding the integrity of the narcotics.  Det. Brad Scholl

11

testified that he labeled and sealed the packages and mailed them via registered mail to the Central Laboratory. Jason Williams testified that he received the narcotics at the Central Lab and described the procedures employed at the lab and how they were routed to the analysts. The two analysts testified as to the methods they employed in order to test the samples and the results of their analysis. Sgt. Raymond Chambers, the evidence custodian at DESI West, testified how the evidence was returned from the laboratory and how Trooper Downs transported the sample from Agency Case# 32-19-0010 back to the laboratory because it had not been tested. Det. Scholl, Jason Williams, Sgt. Chambers and the two lab analysts all testified the evidence was sealed and how if anyone unsealed the evidence, by breaking the evidence tape, they would place their initials on the tape. The Commonwealth in this case showed there was a reasonable probability that the narcotics had not been altered, even absent the testimony of the remote witnesses. Therefore, the trial court's error was harmless beyond a reasonable doubt.

**B. The trial court did not err by consolidating the three indictments for trial.**

Spalding complains that the trial court, by joining his three indictments in one trial, unduly prejudiced him. Kentucky Rules of Criminal Procedure (RCr) 6.18 states:

> Two (2) or more offenses may be charged in the same complaint or two (2) or more offenses whether felonies or misdemeanors, or both, may be charged in the same indictment or information in a separate count for each offense, if **the offenses are of the same or similar character or are based on the same acts or transactions connected together or constituting parts of a common scheme or plan.**

12

(Emphasis added). The Commonwealth did in fact elect to charge Spalding in three separate indictments but later moved to consolidate under RCr 9.12 which provides:

> The court may order two (2) or more indictments, informations, complaints or uniform citations to be tried together if the offenses, and the defendants, if more than one (1), could have been joined in a single indictment, information, complaint or uniform citation. The procedure shall be the same as if the prosecution were under a single indictment, information, complaint or uniform citation.

Even if two or more indictments can be joined under RCr 6.18, this Court has held that a trial court should order the offenses to be tried separately if it would be prejudicial to either the defendant or the Commonwealth to try them together. *Elam v. Commonwealth,* 500 S.W.3d 818, 822 (Ky. 2016) (citing *Cherry v. Commonwealth,* 458 S.W.3d 787, 793 (Ky. 2015)). A trial court has broad discretion when deciding to join separate offenses for trial. *Murray v. Commonwealth,* 399 S.W.3d 398, 405 (Ky. 2013). This Court will not disturb a trial court's ruling absent a showing of actual prejudice and a clear abuse of discretion. *Id.*

Spalding was initially charged under three separate indictments for trafficking in a controlled substance in the first degree, second or greater offense. The same confidential informant was used in all three transactions which occurred over twenty-one days. These are all the same offense and thus clearly allowable under RCr 6.18 as they are the "same or similar character" as contemplated under the rule. Joinder would still be appropriate under RCr 6.18 as these three separate illegal drug transactions constitute a common

13

scheme or plan in order to sell illegal drugs for money. In *Peyton v. Commonwealth*, a trial court consolidated two separate counts of cocaine trafficking which this Court upheld as within the discretion of the trial court. 253 S.W.3d 504, 514 (Ky. 2008). We upheld the trial court even though separate police agencies and different confidential informants were involved in those cases and despite them occurring over the course of several months. *Id.* In the present case, Spalding's confidential informant and the detective were the same in all three cases which occurred over a twenty-one-day period. Besides, the jury acquitted Spalding on the charge where the confidential informant had trouble remembering the transaction and the detective neglected to record the transaction. That the jury acquitted where the Commonwealth failed to prove he committed the offense beyond a reasonable doubt demonstrates the absence of undue prejudice as the jury was able to consider each separate transaction on its own merits. As such the trial court did not abuse its discretion when it consolidated the three indictments for one trial.

### III. CONCLUSION

Based on the foregoing, we hereby find that the trial court erred when it allowed the three chain of custody witnesses to testify remotely and yet find that error to be harmless beyond a reasonable doubt. Also, we find the trial court acted well within its discretion when it consolidated the three trafficking indictments for trial. Finding no reversible error, we hereby affirm the judgment of the Marion Circuit Court.

All sitting. All concur.

14

COUNSEL FOR APPELLANT:

C. Thomas Hectus

COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General