RENDERED: APRIL 24, 2025
TO BE PUBLISHED

# Supreme Court of Kentucky

2023-SC-0573-MR

ELVIS WYNN                                    APPELLANT

|  | ON APPEAL FROM KNOX CIRCUIT COURT |
|---|---|
| V. | HONORABLE GREGORY A. LAY, JUDGE |
|  | NO. 22-CR-00179 |

COMMONWEALTH OF KENTUCKY                   APPELLEE

**OPINION OF THE COURT BY JUSTICE KELLER**

**<u>AFFIRMING</u>**

A Knox County jury convicted Elvis Wynn of one count of bail jumping in the first degree and one count of being a persistent felony offender ("PFO") in the first degree, as a result of his failure to appear at an October 2022 sentencing hearing in another criminal matter. The Knox Circuit Court thereafter sentenced Wynn to twenty years of imprisonment consistent with the jury's recommendation. Wynn now appeals to this Court as a matter of right and challenges his convictions. KY. CONST. § 110(2)(b). Having reviewed the record, the arguments of the parties, and the applicable law, this Court affirms the judgment of the Knox Circuit Court.

## I. FACTS & BACKGROUND

In September 2022, Wynn entered a guilty plea in case No. 21-CR-00068 to charges of possession of a firearm by a convicted felon, operating a motor

vehicle while under the influence, and PFO in the second degree. Wynn was thereafter released on home incarceration and ordered to appear for a sentencing hearing in Knox Circuit Court on October 17, 2022. Wynn, however, failed to appear at that hearing and was subsequently indicted in case No. 22-CR-00179 on new charges of bail jumping in the first degree and PFO in the first degree. Wynn was eventually arrested in February 2023 and subsequently received a seven-year sentence of imprisonment for his original underlying criminal convictions in case No. 21-CR-00068. On September 5, 2023, the Knox Circuit Court held a one-day jury trial on Wynn's new first-degree bail jumping and first-degree PFO charges.

Pursuant to KRS 520.070(1), "A person is guilty of bail jumping in the first degree when, having been released from custody by court order, with or without bail, upon condition that he will subsequently appear at a specified time and place in connection with a charge of having committed a felony, he intentionally fails to appear at that time and place." In turn, proof that the defendant has indeed been "charge[d]" with having committed a felony is an essential element of first-degree bail jumping.

Prior to trial, however, Wynn filed a motion in limine seeking to exclude any evidence that would identify the underlying felony charge (possession of a firearm by a convicted felon) that necessitated his presence in Knox Circuit Court on October 17, 2022, and ultimately precipitated his first-degree bail jumping charge. On the morning of trial, Wynn specifically argued that informing the jury of the specific nature of his prior felony charge would likely

2

prejudice his defense. Accordingly, Wynn offered to "stipulate" to the fact that he had been charged with a felony. The Commonwealth, however, argued that it was not required to accept Wynn's stipulation, and that it was entitled to prove the elements of first-degree bail jumping with evidence of its own choosing. Specifically, the Commonwealth intended to introduce a video recording of Wynn's court appearance and plea colloquy in Knox Circuit Court on September 12, 2022, to prove that Wynn had been ordered to appear in court in October 2022 in connection with an underlying felony charge. The trial court ultimately agreed with the Commonwealth and overruled Wynn's motion.

At trial, the Commonwealth did introduce the aforementioned video recording of Wynn's September 12, 2022, court appearance in Knox Circuit Court wherein Wynn can be seen pleading guilty to charges of possession of a firearm by a convicted felon, operating a motor vehicle while under the influence, and PFO in the second degree. The Commonwealth also introduced a similar video recording from Knox Circuit Court on October 17, 2022, wherein the trial court noted that Wynn had failed to appear for his scheduled sentencing hearing and issued a bench warrant for his arrest. After the Commonwealth introduced these videos, Corbin Police Department Officer Christopher Brown testified that he personally served Wynn with a warrant for his arrest in February 2023. According to Officer Brown, police discovered Wynn in the "game room" of a Royal Tobacco store in Corbin, Kentucky.

Wynn himself took the witness stand and testified that he was with his father on October 17, 2022, when he was supposed to appear for sentencing.

3

Wynn testified that he "just couldn't make it in time" for that sentencing hearing. Wynn also testified that his mother may have "ended up in the hospital" on the same day he was supposed to appear for sentencing. Despite his failure to appear for sentencing in October 2022, Wynn testified that he remained compliant with his bond conditions and remained on home incarceration until he was eventually arrested in February 2023. Wynn also testified that he was aware the Knox Circuit Court had issued a warrant for his arrest after he failed to appear for sentencing, yet he took no steps to contact the court. Wynn's father, Jessie Wynn, testified that he could not remember whether he was with his son on October 17, 2022, and also testified that he was not with Wynn when he was arrested.

After the close of all evidence, the jury convicted Wynn of bail jumping in the first degree and recommended that he receive a five-year sentence of imprisonment. However, after concluding that Wynn was a first-degree persistent felony offender, the jury recommended that Wynn receive the maximum enhanced penalty of twenty years' imprisonment. The Knox Circuit Court thereafter sentenced Wynn in accordance with the jury's recommendation. This appeal followed.

Further facts will be developed below as necessary.

## II. ANALYSIS

Wynn makes two arguments on appeal. First, he asserts that the trial court made a reversible error it when overruled his motion to exclude any evidence of the nature of his underlying felony charge and allowed the

Commonwealth to admit the video recording of his September 2022 appearance in Knox Circuit Court. Second, he argues that his resulting twenty-year sentence for first-degree bail jumping violates the relevant statutory "sentencing cap" as set forth in KRS 532.110(1)(c). This Court, however, is unpersuaded by Wynn's arguments on appeal, and affirms the judgment of the Knox Circuit Court.

### A. The trial court abused its discretion by admitting evidence that identified the specific nature of Wynn's prior felony convictions. However, that error was nonetheless harmless.

As aforementioned, Wynn takes issue with the portions of his recorded court appearance in September 2022 that depict him pleading guilty to various criminal charges. Wynn, however, also challenges the admission of a portion of that video wherein his attorney requested that the trial court release Wynn on bond pending sentencing. During that colloquy, Wynn's defense counsel briefly acknowledged that Wynn had previously "failed to produce a sample for a drug screen." Wynn's defense counsel also stated that, "[Wynn] understands that bail jumping [and] PFO [in the first degree] could be a potential if he did not come back, and he understands that he could be indicted again for that if he didn't come back and abide by the Court's rules."

Wynn argues on appeal that the video recording of his September 2022 appearance in Knox Circuit Court contained improper evidence of his prior bad acts prohibited by Kentucky Rule of Evidence ("KRE") 404(b). More specifically, he asserts that the trial court erred in admitting this evidence because its probative value was substantially outweighed by its potential for undue

5

prejudice. Rather than admit this evidence, Wynn argues that the trial court should have excluded the video of his September 2022 court appearance and allowed him to "stipulate" that he had been ordered to appear in court in connection with a charge of having committed a felony. The Commonwealth contrarily asserts that the video of Wynn's September 2022 court appearance was relevant to prove the elements of first-degree bail jumping, and that the Commonwealth was entitled to prove its case with competent evidence of its choosing.

"Trial courts enjoy substantial discretion in admitting or excluding evidence at trial." *Daugherty v. Commonwealth*, 467 S.W.3d 222, 231 (Ky. 2015). Indeed, "balancing . . . the probative value of . . . evidence against the danger of undue prejudice is a task properly reserved for the sound discretion of the trial judge." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). Accordingly, the proper standard of review on appeal is to ask whether there has been an "abuse of that discretion." *Id.* A trial court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.*

We conclude that the Commonwealth's video of Wynn's September 2022 court appearance certainly contained evidence of Wynn's other crimes, wrongs, or acts. Specifically, the video depicted Wynn pleading guilty to multiple crimes.[1] Pursuant to KRE 404(b), "[e]vidence of other crimes, wrongs, or acts is

---

[1] We are unpersuaded by Wynn's contention that the portion of his recorded court appearance tending to prove that he "failed to produce a sample for a drug screen" on some unknown occasion is evidence prohibited by KRE 404(b). Without

6

not admissible to prove the character of a person in order to show action in conformity therewith." Evidence of a defendant's other crimes, wrongs, or acts may perhaps be admissible, however, "[i]f offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" KRE 404(b)(1). The list of "other purpose[s]" provided in KRE 404(b)(1) is "illustrative rather than exhaustive." *Kelly v. Commonwealth*, 655 S.W.3d 154, 165 (Ky. 2022) (citing *Tamme v. Commonwealth*, 973 S.W.2d 13, 29 (Ky. 1998)).

Here, there can be no doubt that the video recording of Wynn's September 2022, court appearance was relevant and probative for some non-propensity purpose, *i.e.*, to prove that Wynn had been released from custody and ordered to "subsequently appear at a specified time and place in connection with a charge of having committed a felony." KRS 520.070(1). Nonetheless, even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of undue prejudice." KRE 403.

"Evidence that is unduly prejudicial is that which 'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case.'" *Breazeale v. Commonwealth*, 600 S.W.3d

---

more context, the mere act of failing to produce a sample for a drug screen cannot be appropriately labeled a prior bad act. This statement from Wynn's attorney did not invite the kind of undue prejudice intended to be averted by KRE 404(b). More specifically, the fact that Wynn had once "failed to produce a sample for a drug screen" did not serve to paint him as someone with a criminal character. Further, even if the trial court had erred in admitting this testimony, there can be little argument that this statement seriously affected the jury's verdict.

7

682, 693–94 (Ky. 2020) (quoting *Richmond v. Commonwealth*, 534 S.W.3d 228, 232 (Ky. 2017)). The "undue prejudice" most often occasioned by evidence of the defendant's other crimes is the "forbidden character inference" that KRE 404(b) is intended to prevent. *Jenkins v. Commonwealth*, 496 S.W.3d 435, 459 (Ky. 2016).

On the other hand, "[t]he 'probative value' or 'probative worth' of evidence is a measure of how much the evidence tends to make the fact it is introduced to prove more or less probable. The probative force of a particular item of evidence is, therefore, inherently dependent upon the overall probativeness of other available evidence on that point." *Hall v. Commonwealth*, 468 S.W.3d 814, 823–24 (Ky. 2015). Indeed, when a trial court exercises its discretion under KRE 403 and balances a piece of evidence's probative value against its potential to inspire undue prejudice, the trial court "must consider . . . evidentiary alternatives" or "other available evidence to prove the fact in issue." *Norris v. Commonwealth*, 89 S.W.3d 411, 416 (Ky. 2002); *see also Sutton v. Commonwealth*, 627 S.W.3d 836, 854 (Ky. 2021) (holding that, "[w]hen ruling on the admissibility of a gruesome photograph, the trial court should consider whether there are alternatives that would prove the fact at issue without comparable risk of prejudice.").

Even so, the general rule in this Commonwealth has long been that a defendant's offer to "stipulate" to a fact at issue does not deprive the trial court of the discretion to admit competing evidence offered by the Commonwealth. *Helton v. Commonwealth*, 595 S.W.3d 128, 136 (Ky. 2020). Indeed, the trial

8

court cannot accept or deny a defendant's offer to stipulate to a fact at issue because a "stipulation" is an agreement made "between the parties." *Id.* "Furthermore, the Commonwealth is not obligated to accept an offer of stipulation just because it has been presented," and may instead "prove its case by competent evidence of its own choosing." *Id.* (quoting *Pollini v. Commonwealth*, 172 S.W.3d 418, 424 (Ky. 2005)). "No court in this state has the power to require the state to stipulate to anything." *Anderson v. Commonwealth*, 281 S.W.3d 761, 767–68 (Ky. 2009) (Cunningham, J., concurring in result only). Therefore, "[i]n cases where one party does not agree to the proposed stipulation . . . the erstwhile stipulation is actually an admission." *Id.* at 764 n.11; *see also Admission*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "formal admission" as "[a] sworn admission by a party that a fact is true, thereby obviating any need to prove the fact at trial."). Accordingly, one party's "admission" is not necessarily a "stipulation."

Only in exceedingly rare circumstances, a defendant's unilateral admission of a fact at issue *may* be sufficient to render other competing evidence inadmissible under KRE 403 when that competing evidence carries a high risk of undue prejudice or otherwise has little probative value. Indeed, while relying on the Supreme Court of the United States's decision in *Old Chief v. United States*, 519 U.S. 172 (1997), this Court has previously held that a Kentucky defendant charged with possession of a firearm by a convicted felon, KRS 527.040, may generally admit to the fact he or she has been previously convicted of a felony, so as to preclude the Commonwealth from introducing

9

evidence of the specific nature of that prior felony conviction. *Anderson*, 281 S.W.3d at 765–66. In *Anderson*, as in *Old Chief*, the prosecution attempted to prove the defendant's status as a convicted felon by introducing a certified judgment showing the defendant's earlier felony convictions. *Id.* at 762–63. There, this Court determined that the trial court had "abused its discretion" by admitting the Commonwealth's preferred evidence over the defendant's admission. *Id.* at 766.

In possession of a firearm by a convicted felon prosecutions, the rationale behind excluding the prosecution's preferred evidence of the defendant's *specific* felony convictions in favor of the defendant's competing *non-specific* "admission" is that while both pieces of evidence are equally probative of the ultimate fact at issue (*i.e.*, the defendant's status as a convicted felon), only one piece of evidence carries a risk of unduly prejudicing the defendant while that same risk is "wholly absent from the other." *Old Chief*, 519 U.S. at 191. Further, "the prosecution's usual right to present its evidence as it sees fit has . . . virtually no application when the point at issue is a defendant's legal status" as a convicted felon. *Anderson*, 281 S.W.3d at 765 (internal quotation marks omitted) (quoting *Old Chief*, 519 U.S. at 190).

While this Court had previously expressly limited its holding in *Anderson* only to prosecutions of possession of a firearm by a convicted felon charges, 281 S.W.3d at 766, we see no reason today why the logic and reasoning of *Anderson* and *Old Chief* should not be sensibly applied to prosecutions of bail jumping in the first degree. Like the crime of possession of a firearm by a

10

convicted felon, the defendant's "legal status" is an essential element of bail jumping in the first degree. The only difference is that the crime of bail jumping in the first degree requires proof that the defendant was "charge[d]" with having committed a felony, KRS 520.070(1), whereas the crime of possession of a firearm by a convicted felon requires proof that the defendant was actually "convicted" of having committed a felony. KRS 527.040. Further, we see no reason why identifying the specific nature of a defendant's prior felony charges or convictions would be any less unduly prejudicial to that defendant during a first-degree bail jumping prosecution as opposed to a possession of a firearm by a convicted felon prosecution.

Accordingly, we conclude that the trial court indeed abused its discretion here when it admitted the Commonwealth's video recording of Wynn's September 12, 2022, court hearing wherein Wynn can be seen pleading guilty to the charges of possession of a firearm by a convicted felon, operating a motor vehicle while under the influence, and PFO in the second degree. First, the Commonwealth's proffered recording and Wynn's competing admission were equally probative of the fact at issue (*i.e.*, that Wynn had been ordered to appear in Knox Circuit Court on October 17, 2022, in connection with a charge of having committed a felony). Second, the Commonwealth's recording certainly carried a danger of undue prejudice due to the nature of the specific charges that Wynn pled guilty to at his September 2022 court appearance. By viewing that recording, not only did the jury learn that Wynn had pled guilty to the underlying felony of "possession of a firearm of a convicted felon," but the

11

nature of that conviction also necessitated that he had at least once been convicted of *another* unknown felony. This unduly prejudicial evidence certainly had the capacity to invite the inference that Wynn was a habitual felon with criminal character. Therefore, there is no doubt that the limited probative value of the Commonwealth's recording of Wynn's September 2022 court appearance was substantially outweighed by that evidence's potential to inspire undue prejudice.

Nonetheless, this Court cannot say that the trial court's error warrants a reversal of Wynn's convictions. "No error in . . . the admission . . . of evidence . . . is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order unless it appears to the court that the denial of such relief would be inconsistent with substantial justice." Kentucky Rule of Criminal Procedure ("RCr") 9.24. This Court has determined that "a nonconstitutional evidentiary error may be deemed harmless if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error." *Murray v. Commonwealth*, 399 S.W.3d 398, 404 (Ky. 2013) (citing *Kotteakos v. United States*, 328 U.S. 750 (1946)). "The inquiry is not simply 'whether there was enough [evidence] to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.'" *Winstead v. Commonwealth*, 283 S.W.3d 678, 689 (Ky. 2009) (quoting *Kotteakos*, 328 U.S. at 765).

Here, any undue prejudice that Wynn actually suffered as a result of the disclosure of the specific nature of his prior criminal charges was likely insignificant because those criminal charges (possession of a firearm by a convicted felon, operating a motor vehicle while under the influence, and PFO in the second degree) were not for violent or shocking offenses. Rather, if the jury had not learned of the specific nature of Wynn's criminal charges, it could have very well speculated that he had been charged with far more serious crimes. Further, the remaining evidence incriminating Wynn—namely his own testimony—was probative and compelling. Wynn admitted at trial that he knew the Knox Circuit Court had issued a warrant for his arrest after he failed to appear for his October 17, 2022, sentencing hearing. However, Wynn also testified that he took no steps to contact the court after his failure to appear and that he instead remained at home until he was eventually arrested in February 2023. This evidence alone was certainly probative to prove that Wynn had "intentionally" failed to appear for his sentencing hearing. Therefore, we cannot say that trial court's error here substantially influenced the jury's verdict.

## B. Wynn's twenty-year sentence for first-degree bail jumping must run consecutively to his earlier seven-year sentence.

Wynn next argues that he received an erroneous sentence when the trial court ordered him to serve a twenty-year sentence for bail jumping in case No. 22-CR-00179 that would run consecutively to his seven-year sentence previously imposed in case No. 21-CR-00068. Wynn more specifically asserts that the statutory "sentencing cap" set forth in KRS 532.110(1)(c) and this

Court's precedent in *Kimmel v. Commonwealth*, 671 S.W.3d 230 (Ky. 2023) dictate that the aggregate of his two consecutive sentences could not exceed a maximum of twenty years' imprisonment. This Court holds that Wynn's case is distinguishable from that of *Kimmel,* and we affirm the Knox Circuit Court.

Wynn was sentenced to a seven-year term of imprisonment in June 2023 for his convictions in case No. 21-CR-00068. After the jury convicted Wynn of first-degree bail jumping at his September 2023 trial, the jury recommended that he receive a five-year sentence enhanced to the maximum allowable penalty of twenty years' imprisonment because of his first-degree PFO status. Prior to his sentencing, however, Wynn filed a "Motion to Impose Sentencing Cap" in which he argued that the aggregate penalty for his felony convictions in case Nos. 21-CR-00068 and 22-CR-00179 could not exceed twenty years in accordance with KRS 532.110(1)(c). Because Wynn had already received a seven-year sentence in No. 21-CR-00068, he argued that the trial court was constrained to impose a maximum sentence of thirteen years in case No. 22-CR-00179. The trial court ultimately denied Wynn's motion and ordered him to serve a twenty-year sentence for his first-degree bail jumping conviction that would run consecutively to his previous seven-year sentence.

To resolve Wynn's arguments on appeal, a brief review of the relevant statutes is first in order. Pursuant to KRS 533.060(3),

> When a person commits an offense while awaiting trial for another offense, and is subsequently convicted or enters a plea of guilty to the offense committed while awaiting trial, the sentence imposed for the offense committed while awaiting trial shall not run concurrently with confinement for the offense for which the person is awaiting trial.

14

Relevant here, a defendant is considered to be "awaiting trial" for purposes of KRS 533.060(3) during the period he is "awaiting sentencing." *Cosby v. Commonwealth*, 147 S.W.3d 56, 59 (Ky. 2004). Accordingly, because Wynn was convicted of having committed an act of first-degree bail jumping when he had yet to be sentenced in case No. 21-CR-00068, the plain text of KRS 533.060(3) would dictate that his resulting punishment for the offense of first-degree bail jumping "shall not run concurrently" with his seven-year sentence for possession of a firearm by a convicted felon.

However, as it existed at the time of Wynn's sentencing, KRS 532.110(1)(c), the so-called "sentencing cap" statute, relevantly stated that, "the aggregate of consecutive indeterminate terms shall not exceed in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed."[2] Here, bail jumping in the first degree is a Class D felony. KRS 520.070(3). Possession of a firearm by a convicted felon—which Wynn was convicted of in case No. 21-CR-00068—is also a Class D felony unless the firearm possessed is a handgun in which case it is a Class C felony. KRS 527.040(2)(a). Accordingly, pursuant to KRS 532.080(6)(b), the maximum penalty that Wynn could have received for either one of his two felony convictions was twenty years' imprisonment. A plain reading of the "sentencing

---

[2] The General Assembly has since amended KRS 532.110(1)(c) to specifically not apply to consecutive sentences imposed pursuant to KRS 533.050(2)–(3).

cap" statute, KRS 532.110(1)(c), might then dictate that the "aggregate" of Wynn's two consecutive terms of imprisonment "shall not exceed" twenty years.

The conflict between these two provisions is apparent. One statute purports to mandate that Wynn's two sentences run consecutively regardless of their length, while the other statute seems to require that the aggregate of Wynn's two sentences not exceed twenty years. This is not, however, the first time this Court has examined the tension between KRS 533.060(3) and KRS 532.110(1)(c). Indeed, in *Kimmel v. Commonwealth*, 671 S.W.3d 230, 239 (Ky. 2023), this Court held that our mandate to "harmonize and give effect to" conflicting statutes requires that "while sentences under KRS 533.060(3) must be consecutive, the resulting total term of years cannot violate the maximum aggregate sentence cap set forth in KRS 532.110(1)(c)." Accordingly, Wynn would have this Court apply the holding of *Kimmel* to the facts of this case, resulting in a conclusion that the Knox Circuit Court erred in ordering him to serve two consecutive terms of imprisonment totaling twenty-seven years. The facts of *Kimmel*, however, are materially distinguishable from the case at hand insofar as the appellant in *Kimmel* elected to have his felony charges "tried together," whereas Wynn was not only convicted of his felony charges in two separate proceedings, but he had also already been sentenced in one of those proceedings prior to being convicted and sentenced in the other.

In *Kimmel*, the appellant was initially charged with third-degree burglary and theft by unlawful taking. 671 S.W.3d at 234. After he was released on bond, the appellant was subsequently charged with additional counts of third-

16

degree burglary, theft by unlawful taking, and being a first-degree persistent felony offender. *Id.* The appellant thereafter elected to have all of those charges "tried together" at a single trial. *Id.*

Here, Wynn was initially charged with one count of possession of a firearm by a convicted felon, one count of operating a motor vehicle while under the influence, and one count of being a second-degree persistent felony offender. Importantly, Wynn pled guilty to those charges, was released on bond, and was then subsequently charged with one count of first-degree bail jumping and one count of being a first-degree persistent felony offender. Wynn was thereafter sentenced to a seven-year term of imprisonment resulting from his initial criminal charges before he was tried for first-degree bail jumping. Unlike the appellant in *Kimmel*, Wynn could *not* have elected to have his multiple felony charges tried together because he had already pled guilty to possession of a firearm by a convicted felon prior to being charged with first-degree bail jumping. That distinction is crucial because the "sentencing cap" statute, KRS 532.110(1)(c), "does not extend to sentences resulting from previous cases," *i.e.*, those sentences resulting from a "previous indictment and trial." *Johnson v. Commonwealth*, 553 S.W.3d 213, 220 (Ky. 2018); *Bryant v. Commonwealth*, No. 2023-SC-0218-MR, 2024 WL 3930042 (Ky. Aug. 22, 2024).

In *Johnson v. Commonwealth*, the appellant was indicted on and convicted of two counts of first-degree trafficking in a controlled substance, one count of possession of a firearm by a convicted felon, and one count of being a first-degree persistent felony offender. 553 S.W.3d at 215. The trial court then

17

ordered the appellant to serve a twenty-year sentence that was to run consecutively to a prior ten-year sentence the appellant had previously received as the result of a trafficking conviction. *Id.* at 219. Importantly, this Court held that the "sentencing cap" statute, KRS 532.110(1)(c), did not mandate that the aggregate of the appellant's two consecutive sentences be capped at the twenty-year maximum, because it interpreted KRS 532.110(1)(c) not to apply to sentences arising from separate indictments and trials. *Id.* at 220.

Like the appellant in *Johnson*, Wynn had already been separately indicted, convicted, and sentenced in case No. 21-CR-00068 prior to being tried, convicted, and sentenced for first-degree bail jumping in case No. 22-CR-00179. Therefore, our precedent would dictate that the "sentencing cap" of KRS 532.110(1)(c) did not require the trial court to fix Wynn's penalty for first-degree bail jumping at thirteen years of imprisonment, so as to keep his "aggregate" punishment for both felony convictions below twenty years of imprisonment. Any contrary interpretation of the General Assembly's "sentencing cap" statute would lead to an absurd result. Under a contrary interpretation of KRS 532.110(1)(c), any criminal who was convicted of having committed a Class D felony and was thereafter sentenced would be free to commit any number of Class D felonies with the peace of mind of knowing that he could only receive an aggregate prison sentence of, at most, twenty years. This cannot be what the legislature intended when it enacted KRS 532.110(1)(c).

Accordingly, it is clear here that the trial court did not err in ordering that Wynn serve a twenty-year sentence as a result of his first-degree bail jumping charge. Pursuant to KRS 533.060(3), that twenty-year sentence was required to run consecutively to any term of imprisonment that Wynn had been ordered to serve as a result of his earlier convictions in No. 21-CR-00068.

### III.   CONCLUSION

For the foregoing reasons, we affirm the judgment of the Knox Circuit Court.

All sitting.  All concur.

COUNSEL FOR APPELLANT:

Molly Mattingly
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Russell M. Coleman
Kentucky Attorney General

Stephanie Lynne McKeehan
Assistant Attorney General